UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

KARRIE ACKLEY,
on behalf of herself and
all others similarly situated,

       Plaintiff,                              Case No. 22-cv-232

     v.

MARATHON CHEESE CORPORATION,

       Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF COLLECTIVE AND
CLASS ACTION SETTLEMENT**

---

**WALCHESKE & LUZI, LLC**
James A. Walcheske SBN 1065635
Scott S. Luzi SBN 1067405
David M. Potteiger SBN 1067009
235 N. Executive Drive, Suite 240
Brookfield, WI 53005

*Attorneys for Plaintiff*

**GODFREY & KAHN, S.C.**
Erin M. Cook SBN 1074294
Josh Johanningmeier SBN 1041135
Sarah K. Mueller SBN 1114561
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615

*Attorneys for Defendant*

i

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS .........................................................................................1

I.      PROCEDURAL HISTORY AND SETTLEMENT BACKGROUND ..................1

II.     THE SETTLEMENT AGREEMENT ...................................................................6

    A.      The Parties stipulate to both collective and class certification. ..................6

    B.      The settlement amount and allocation of funds. .........................................6

    C.      The Parties stipulate to distribution of the notices of settlement. ...............8

    D.      The scope of released claims. .....................................................................8

ARGUMENT .............................................................................................................9

I.      PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT
      AGREEMENT IS APPROPRIATE. ....................................................................9

    A.      The Settlement Agreement is fair, reasonable, and adequate. ....................9

        1.      Plaintiff and Plaintiff's Counsel have adequately represented the
             WWPCL Class. ..............................................................................10

        2.      The Parties negotiated the Settlement Agreement at arms' length.
             .......................................................................................................11

        3.      The relief provided to the WWPCL Class is adequate. .................11

            a.      Costs, risks, and delay of trial and appeal.........................12

            b.      Terms of any proposed award of attorneys' fees ...............12

            c.      Effectiveness of proposed method of distributing relief....14

            d.      Other agreements .............................................................14

        4.      The Settlement Agreement treats WWPCL Class members
             equitably..........................................................................................14

    B.      The WWPCL Class satisfies the requirements for certification. ...............15

        1.      The WWPCL Class is sufficiently numerous. ...............................16

        2.      Common questions of law and fact predominate...........................16

        3.      Plaintiff's claims are typical of the WWPCL Class.......................17

        4.      A class action is the best method for resolution. ...........................18

i

5.      The WWPCL Class is definite and ascertainable. .........................19

C.      The Parties' stipulated certification and settlement of the FLSA Collective
        are similarly reasonable and appropriate. ...................................................19

D.      The Parties' proposed Notice Packet and manner of service are
        appropriate. ................................................................................................21

II.     THE SETTLEMENT AGREEMENT SETS FORTH THE REMAINING
        PROCEDURE FOLLOWING PRELIMINARY APPROVAL...........................22

CONCLUSION...............................................................................................................23

## INTRODUCTION

Named Plaintiff Karrie Ackley and Defendant Marathon Cheese Corporation (together, "the Parties") hereby submit this memorandum of law in support of their Joint Motion for Preliminary Approval of Collective and Class Action Settlement (ECF No. 18 ("Joint Motion")) and Settlement Agreement & Release (ECF No. 20 ("Settlement Agreement")) for the Court's consideration. The Settlement Agreement provides for a gross settlement amount not to exceed $950,000.00, inclusive of alleged damages by Plaintiff and all putative class and collective members, Plaintiff's proposed service award, and Plaintiff's reasonable attorneys' fees and costs.

The Parties believe the settlement is a fair, reasonable, and adequate resolution of a *bona fide* dispute that fully and adequately satisfies this Court's criteria for such settlements. As such, the Parties respectfully request that the Court: (1) preliminarily approve the Settlement Agreement; (2) approve the Parties' Stipulation for Collective and Class Certification (ECF No. 22); (3) appoint Walcheske & Luzi, LLC as counsel for the FLSA Collective and WWPCL Class; (4) appoint Plaintiff Karrie Ackley as representative for the FLSA Collective and WWPCL Class; (5) approve the Parties' proposed Notices of Class and Collective Action and Proposed Settlement, (ECF Nos. 20-2, 3); and (6) make all other findings as set forth in the Parties' Joint Motion.

## STATEMENT OF FACTS

### I. PROCEDURAL HISTORY AND SETTLEMENT BACKGROUND

On April 26, 2022, Plaintiff Karrie Ackley filed her Complaint against Defendant Marathon Cheese Corporation on behalf of herself and all other similarly situated current and former hourly-paid employees of Defendant. (ECF No. 1 ("Complaint").) Plaintiff worked as an hourly-paid Line Worker at Defendant's Medford, Wisconsin location from April 8, 2019 to May 11, 2022. (ECF No. 8 ¶ 27.)

In her Complaint, Plaintiff asserts five claims for relief against Defendant – two pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), and three pursuant to Wisconsin's Wage Payment and Collection Laws ("WWPCL"). (*See* Compl. ¶¶ 95-148.) Plaintiff alleges that Defendant failed to fully compensate her and all other hourly-paid employees for all hours worked by unfairly rounding employee clock-in and clock-out times to the detriment of employees ("Rounding Claims") and not paying for pre- and post-shift time spent donning and doffing food processing-related protective gear and other equipment ("Donning and Doffing Claims"). (*Id.* ¶ 2.) Thus, through her Complaint, Plaintiff sought remuneration for herself and all other similarly situated employees through a collective action pursuant to the FLSA for unpaid overtime wages (*see id*. ¶¶ 95-116), and a class action pursuant to Fed. R. Civ. P. 23 for unpaid overtime and agreed-upon wages (*see id.* ¶¶ 117-148).

In September 2022, and while engaging in formal discovery, Defendant's Counsel provided a highly detailed analysis of Plaintiff's claims that set forth the results of their investigation of the same, as well as their positions challenging the merits of Plaintiff's claims and the appropriateness (or lack thereof) of collective and class treatment in this case. (Declaration of James A. Walcheske ("Walcheske Decl.") ¶ 3.) In addition to Defendant's Counsel's written analysis, Defendant also produced timecards, written policies, headcounts, hours details, and employee lists. (*Id.* ¶ 4.)

As to Plaintiff's Rounding Claims, Defendant's Counsel provided a description of Defendant's rounding policies, where (by facility) and when they were and were not in effect, the variations in the rounding policies between Defendant's facilities, and the variations in Defendant's timekeeping policies and procedures where and when rounding policies were not in effect. (*Id*. ¶ 3.) As to Plaintiff's Donning and Doffing Claims, Defendant outlined how the

protective gear required to be worn by Defendant's employees varied by employee, task or job responsibility, and location. (*Id*.) Similarly, Defendant asserted that because it did not maintain a uniform donning and doffing policy at any of its facilities, employees' donning and doffing practices differed, as did their timekeeping practices in relation to donning and doffing – *e.g*., cold storage warehouse employees could punch in before they put on their gear, whereas others (like Plaintiff) only punched in after they had put on their required gear, washed their hands, and walked through foot foamers. (*Id*.)

Based on counsel's analysis of Plaintiff's Rounding Claims, and as also explained in detail in September 2022, Defendant asserted its belief that, assuming the existence of a collective/class and assuming such collective/class totaled approximately 4,000 individuals,[1] potential damages from those claims totaled a maximum of approximately $548,000, using a two-year statute of limitations. (*Id*.) Based on counsel's analysis of Plaintiff's Donning and Doffing Claims, in particular the number of defenses available relating to the same, Defendant did not assign any damages amount to those claims. (*Id*.)

Over the course of the proceeding weeks, Plaintiff's Counsel conducted its own analysis of Defendant's timekeeping records and policies, further evaluating not simply the merits of Plaintiff's claims, but also the (potential) hurdles Plaintiff faced with respect to obtaining conditional certification and, if granted, final certification of the collective as well as class certification. (*Id.* ¶ 5.) Plaintiff's Counsel further created various damages models accounting for the wide range of variables at play in this case, specifically, varying locations, headcounts, time periods, and total minutes each shift that allegedly went uncompensated because of Defendant's varying policies and practices. (*Id*.)

---

[1] The actual putative FLSA Collective and WWPCL Class totals 4,107 individuals. (*See* ECF No. 20-1.)

Based on Plaintiff's Counsel's analysis, Plaintiff believed that the maximum potential damages on both Plaintiff's Rounding Claims and Donning and Doffing Claims totaled between approximately $1,000,000 and $3,000,000. (*Id.* ¶ 6.) This range was created using a number of assumptions, namely that: all hourly-paid employees at all of Defendant's facilities were properly included in Plaintiff's claims (and, as such, ignored for settlement purposes the variations between the policies in place at those facilities, as well as between the employees at those facilities); all hourly-paid employees worked every day of every workweek during the entirety of the statutory period (*i.e.*, there was no turnover, unpaid vacation, unpaid non-work days, etc.); every minute shaved from each and every hourly-paid employee's hours worked was compensable in nature; and, there was full participation in the collective and class, *i.e.*, that every individual opted into the collective and no class members opted out. (*Id.*) The variance in the range was attributable to the potential range in the ultimate headcount, as well as the number of uncompensated minutes each workday. (*Id.*)

In approximately mid-October 2022, the Parties conferred, shared, and explained their divergent views on the merits of the case, the (potential) hurdles to collective and class certification, and damages. (*Id.* ¶ 7.) Following their discussion, Plaintiff's Counsel provided a detailed explanation of their damages calculations and the variables utilized therein. (*Id.*)

Thereafter, the Parties continued engaging in substantive settlement communications and data and information exchanges to bridge the gap between their respective positions considering what would quite clearly be hard-fought and expensive litigation of Plaintiff's claims. (*Id.* ¶ 8.) This process continued until the Parties reached an agreement in principle on or about December 27, 2022, approximately three months after their discussions began. (*Id.*)

While the Parties had communicated and exchanged various monetary and nonmonetary terms over the course of their settlement negotiations, there remained details that needed to be agreed-upon as part of what would ultimately become the Parties' Settlement Agreement. Accordingly, the Parties continued their negotiations on such details and provisions and further exchanged draft settlement agreements until reaching an ultimate agreement on the terms of their settlement in late-March 2023.[2] (*Id.* ¶ 9.)

Over the proceeding months since finalizing their Settlement Agreement, the Parties have worked diligently to prepare the allocations to all putative members of the FLSA Collective and WWPCL Class, the proposed notices to such putative members, and the instant filings before the Court. (*Id.* ¶ 11.)

Resolution in this case represents a resolution of a *bona fide* dispute between the Parties. Plaintiff has at all times believed in and prosecuted the viability and merits of her legal claims against Defendant, while at the same time, Defendant has vehemently denied and defended against all liability and damages with respect to Plaintiff's claims, and alleged numerous meritorious defenses to liability, certification, and damages. (*Id.* ¶ 12.) However, to avoid continued expense and inconvenience to the Parties, as well as the distraction of burdensome and protracted litigation, the Parties ultimately concluded that it was in their best interests to resolve the litigation. (*Id.*) As a result, the Parties now jointly request that this Court approve their Settlement Agreement to end the litigation.

---

[2] A complicating factor in the Parties' discussions was that, in addition to this matter, Plaintiff filed a discrimination complaint against Defendant with the Wisconsin Department of Workforce Development – Equal Rights Division. (*Id.* ¶ 10.) While the Parties aimed to resolve all litigation, inclusive of this matter and Plaintiff's discrimination complaint, the Parties' respective positions on how to simultaneously address the resolutions of the matters evolved and diverged over the course of their negotiations. (*Id.*) That matter has now been resolved outside of, and apart from, the Settlement Agreement. (*Id.*)

## II.    THE SETTLEMENT AGREEMENT

The terms of the Parties' Settlement Agreement are summarized below.

### A.    The Parties stipulate to both collective and class certification.

The Parties filed a Stipulation for Collective and Class Certification with the Court. (ECF

No. 22.) According to the Stipulation, the parties have agreed, for purposes of settlement only, to

certify the following opt-in collective pursuant to 29 U.S.C. § 216(b):

> <u>FLSA Collective:</u> All hourly-paid production employees employed
> by Defendant between April 26, 2019, and April 26, 2022, as
> identified in Exhibit A to the Settlement Agreement and who file a
> Consent to Join Form within 45 calendar days of the postmark date
> on the Notice Packet.

(Settlement Agreement, § I.B.)

The Stipulation further provides that, for settlement purposes only, the parties have agreed

to certify the following opt-out class pursuant to Fed. R. Civ. P. 23:

> <u>WWPCL Class:</u> All hourly-paid production employees employed by
> Defendant in Wisconsin between April 26, 2020, and April 26,
> 2022, as identified in Exhibit A to the Settlement Agreement and
> who do not file a Request to Exclude within 45 calendar days of the
> postmark date on the Notice Packet.

(*Id*. § I.C.) The Parties, by their Joint Motion, ask the Court to approve the Stipulation for purposes

of effecting the Settlement Agreement.

### B.    The settlement amount and allocation of funds.

The Parties agree to settle the alleged claims on a class and collective basis in a Gross

Settlement Amount not to exceed $950,000, which is the maximum amount Defendant has agreed

to pay to fully resolve and settle the claims asserted in the Complaint. (*Id.* § II.A.) The Parties

arrived at the negotiated Gross Settlement Amount after considerable negotiation and recognition

of the risks, uncertainty, expenses, and costs faced by the parties if litigation continued.

The Gross Settlement Amount breaks down into the following components:

- The Parties anticipate the Net Settlement Fund created for putative members of the FLSA Collective and WWPCL Class will total no less than $613,333.33, with each participating member eligible to receive the amount specified in Exhibit A to the Settlement Agreement (*id.* § II.B.3);

- Plaintiff's Counsel will move the Court for an award of $20,000 from the Gross Settlement Amount as a service award to Plaintiff for the services she rendered in the Lawsuit. Defendant intends to oppose Plaintiff's Counsel's application for a $20,000 service award to Plaintiff (*id.* § II.B.2); and

- Plaintiff's Counsel will move the Court for an award of $316,666.67 in reasonable attorneys' fees and costs. Defendant does not oppose Plaintiff's Counsel's requested fees and costs (*id.* § II.B.1).

In the event the Court approves a service award in an amount less than $20,000 and/or attorneys' fees and costs in an amount less than $316,666.67, the sum of the difference between the amounts sought and awarded ("Additional Distribution") will be added to the Net Settlement Fund and distributed to the individuals identified on Exhibit A on a pro-rata basis. (*Id.* § II.B.4.) Defendant is responsible for paying the costs of the settlement administrator and employer payroll taxes outside of and in addition to the Gross Settlement Amount. (*Id.* § II.A.) Accordingly, any portion of the Additional Distribution that is attributable to members of the putative FLSA Collective who do not timely opt in and to members of the putative WWPCL Class who timely exclude themselves shall revert to Defendant. (*Id.* § II.B.4.)

The Gross Settlement Amount and resulting Net Settlement Fund were structured to provide putative members of the FLSA Collective and WWPCL Class with an amount allegedly owed as basic wage damages and penalties, after adjusting for risk based on Plaintiff's Counsel's analysis of all relevant data and information. (*See* Walcheske Decl. ¶ 18.)

**C.      The Parties stipulate to distribution of the notices of settlement.**

The Parties submit to this Court for approval a Notice Packet[3] that is attached to the Settlement Agreement as Exhibits B and C. The Notice Packet, as approved by the Court, will be distributed by Rust Consulting, which, through the Joint Motion, the Parties request be appointed as Settlement Administrator in this case. The Notice Packets will be distributed via U.S. first-class mail, using a list of names and last known addresses from records maintained by Defendant (the "Class List"). (*Id.* § III.B.) While Defendant maintained mailing addresses for its hourly-paid production employees, it did not maintain personal email addresses. (Walcheske Decl. ¶ 15.) Given these circumstances, the Parties believe that transmission of the Notice Packet via U.S. first class mail to individuals' last known addresses constitutes the best method of providing notice. (*Id.*) Moreover, the Settlement Administrator will use additional resources, and the Parties agree to cooperate and assist the Settlement Administrator, to identify an updated mailing address for any initial Notice Packet that is returned as undeliverable. (*Id.*)

**D.      The scope of released claims.**

As explained in the Settlement Agreement, members of the FLSA Collective will release Defendant from all federal wage and hour law claims relating to the facts alleged in the Complaint. (*Id.* § V.B.) Similarly, members of the WWPCL Class will release Defendant from all state wage and hour law claims relating to the facts alleged in the Complaint. (*Id.* § V.C.) Finally, in exchange for a service award as approved by the Court, Plaintiff will release Defendant from a broader array

---

[3] "Notice Packet" collectively refers to the two versions of the Notice of Class and Collective Action and Proposed Settlement filed with the Court as ECF Nos. 20-2 and 20-3. The Parties created two versions because Defendant maintains facilities both in and outside of Wisconsin. (Walcheske Decl. ¶ 14.) The Notice of Class and Collective Action and Proposed Settlement filed with the Court as ECF No. 20-2 is designed to provide adequate notice to putative members of the FLSA Collective who are also members of the WWPCL Class. The Notice filed with the Court as ECF No. 20-3 is designed to provide adequate notice to putative members of the FLSA Collective who are not eligible to participate in the WWPCL Class because they worked at facilities outside of Wisconsin and, as such, do not meet the class definition. (*Id.*)

of claims, including all claims that arise out of, or are in any manner related to, her employment

relationship with Defendant. (*Id.* § V.A.)

**ARGUMENT**

## I.    PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT AGREEMENT IS APPROPRIATE.

The Parties jointly ask this Court to grant preliminary approval of their Settlement

Agreement, the first step in bringing this lawsuit to a resolution. Preliminary approval of a class

action settlement allows putative members to receive notice of the proposed settlement terms and

the date and time for the fairness hearing at which they may be heard and further evidence and

argument concerning the fairness, adequacy, and reasonableness of the settlement agreement may

be presented. *See* Manual for Complex Litigation at §§ 13.14, 21.632.

At this stage, the Court need only determine whether the proposed settlement is "within

the range of possible approval" to warrant sending notice to class members and proceeding with a

fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). More specifically,

the Court must determine whether it "will likely be able" to: (1) find the settlement terms fair,

reasonable, and adequate; and (2) certify the class for purposes of judgment on the proposed

settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). Based on the following, the parties believe these

conditions have been met.

### A.    The Settlement Agreement is fair, reasonable, and adequate.

Rule 23(e)(2) of the Federal Rules of Civil Procedure outlines the factors the Court must

consider when evaluating whether a proposed settlement is fair, reasonable, and adequate. These

factors include whether: (1) the class representative and class counsel have adequately represented

the class; (2) the settlement was negotiated at arm's length; (3) the relief provided to the class is

9

adequate; and (4) the settlement treats class members equitably relative to each other. Analysis of these factors in this case reveals the Settlement Agreement is fair, reasonable, and adequate.

### 1. Plaintiff and Plaintiff's Counsel have adequately represented the WWPCL Class.

Adequacy of representation requires a finding that the interests of the class representative and class are aligned, and class counsel is capable of litigating the case. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified,* (Sept. 22, 2011). Both factors are present here.

Plaintiff's interests are adequately aligned with the class she seeks to represent. Plaintiff agreed to serve as Named Plaintiff to represent the WWPCL Class and coordinate with Plaintiff's Counsel to ensure all putative members of the WWPCL Class received appropriate representation in this lawsuit. (Walcheske Decl. ¶ 20.) Plaintiff does not have any antagonistic or apparent conflicting interests with the class members she seeks to represent, in large part, because Plaintiff allegedly has been injured by the same conduct as the WWPCL Class and she seeks compensation for her own benefit as well as the benefit of the WWPCL Class. And while the Settlement Agreement allows Plaintiff to move the Court for a service award, the Court must approve the amount of the service award to prevent any class member from being deprived of a fair recovery.

Plaintiff's Counsel seeks to represent the WWPCL Class as class counsel and has served as class counsel in numerous cases involving claims similar to Plaintiff's claims.[4] Plaintiff, through Plaintiff's Counsel, has pursued the claims alleged in this case on a representative basis for more

---

[4] *See, e.g., Kolbow v. API Heat Transfer, Inc.,* No. 22-cv-451-jps, ECF No. 25 (E.D. Wis. May 22, 2023); *Solem v. McCain Foods, USA, Inc.*, No. 22-cv-137-wcg, ECF No. 32 (E.D. Wis. Apr. 17, 2023); *Sharpless v. KI Mobility LLC*, No. 21-cv-816-jdp, ECF No. 24 (W.D. Wis. Apr. 12, 2023); *Schneider v. Copperleaf Mgmt. Grp. Inc.*, No. 22-cv-1161-bhl, ECF No. 15 (E.D. Wis. Mar. 20, 2023); *Wallace v. Tri-City Glass & Door, Inc.*, 21-cv-490-wcg, (E.D. Wis. Aug. 17, 2022); *Smith, et al. v. Alexian Vill. of Milwaukee, Inc., et al.,* 20-cv-421-bhl (E.D. Wis. June 23, 2022).

than one year. (*See* Walcheske Decl. ¶ 20.) Prior to and over the course of the litigation, Plaintiff's Counsel investigated the facts and potential claims, prepared the Complaint, engaged in extensive analysis of documents produced by Defendant, prepared numerous damages models based on Defendant's timekeeping and payroll records, analyzed Defendant's defenses, and engaged in extensive settlement negotiations, among other things. (*Id.* ¶ 21.) The Settlement Agreement was reached only after negotiations between counsel with extensive knowledge and expertise litigating wage and hour class and collective actions. (*See id.* ¶¶ 3-9.) Plaintiff's Counsel views this settlement as a significant result for the putative WWPCL Class and, accordingly, believes Plaintiff has adequately represented the best interests of the WWPCL Class. (*Id.* ¶ 22; *see also id.* ¶ 18.)

### 2. The Parties negotiated the Settlement Agreement at arms' length.

The Settlement Agreement is the result of arm's length negotiations between experienced counsel. There is no evidence of fraud or collusion. Despite the Parties' divergent views regarding Plaintiff's claims, the appropriate scope of those claims, and the potential damages flowing therefrom, if any, they expended considerable time and effort working toward a compromise to resolve the claims of Plaintiff, the putative FLSA Collective, and the putative WWPCL Class. (*See id*. ¶¶ 3-11.) Indeed, as detailed herein, even after the Parties reached an agreement in principle, they still devoted significant time to finalizing and memorializing all aspects of their agreement as embodied in the Settlement Agreement. (*See id.* ¶¶ 9, 11.)

### 3. The relief provided to the WWPCL Class is adequate.

The factors the Court considers when determining the adequacy of relief provided to the putative class include the following: (a) the costs, risks, and delay of trial and appeal; (b) the terms of any proposed award of attorneys' fees; (c) the effectiveness of any proposed method of distributing relief to the class, including the method for processing claims; and (d) any other agreement made in connection with the proposed settlement. Fed. R. Civ. P. 23(e)(2)(c).

**a.    Costs, risks, and delay of trial and appeal**

The Court set a trial date of May 6, 2024, in this matter (ECF No. 13), and the factual and legal issues in this dispute would require significant additional commitments of time and resources over the next year if the case proceeded to trial. The Parties would need to continue engaging in formal discovery, including written discovery and depositions of lay witnesses and experts. The Parties would also have to engage in extensive motion practice, including certification, decertification, and summary judgment briefing. If the matter continued beyond summary judgment, then the parties would have to participate in pretrial matters including exchanging exhibits and witness lists, preparing pretrial reports, motions in limine, jury instructions, and proposed verdict forms. Accordingly, the anticipated time and expense of moving forward with the case in relation to the substantial disputes that remain on liability and damages weighs in favor of the Court approving the Parties' negotiated resolution of this matter.

The inherent risks in taking a case to trial (and potentially further on appeal) are readily apparent in this case, too. Because wage and hour class and collective actions rarely proceed to trial, there is little precedent on which to rely for purposes of predicting an outcome in this case. Moreover, the case is scheduled for a jury trial, removing even more predictability regarding the ultimate outcome. Rather than assume this substantial risk and uncertainty, the Parties took matters into their own hands and negotiated a fair and reasonable resolution.

**b.    Terms of any proposed award of attorneys' fees**

Plaintiff's Counsel will move the Court for an award of attorneys' fees and costs in accordance with their fee agreement with Plaintiff. (Walcheske Decl. ¶¶ 23, 25.) Specifically, Plaintiff's Counsel seeks reimbursement of fees and costs in the total amount of $316,666.67 from the Gross Settlement Amount. (Settlement Agreement, § II.B.1.) Defendant does not oppose Plaintiff's Counsel's request. (*Id.*)

Plaintiff's Counsel accepted this case on a contingency basis under which counsel would receive forty percent of any recovery, exclusive of costs. (Walcheske Decl. ¶ 23.) In doing so, Plaintiff's Counsel agreed to bear the entirety of the risk in the event there was no recovery resulting from the litigation. (*Id.* ¶ 24.) Similarly, it bore the risk of litigating this case for an extended period only to be denied recovery commensurate with its fees and costs expended through any number of events, including but not limited to, failure to obtain conditional certification or, if obtained, certification of the collective and/or class, and if obtained, the risks posed by later decertification, summary judgment, and trial. (*Id.*)

As will be explained in more detail in Plaintiff's Counsel's forthcoming Motion for and Memorandum of Law in Support of Attorneys' Fees and Costs, Plaintiff's Counsel believes the requested attorneys' fees are reasonable and consistent with common fund principles and the percentage of their recovery (33.33%), exclusive of costs, satisfies the "market-based approach" utilized when setting the percentage of a settlement fund to be awarded. (*Id.* ¶ 25.) In keeping with that approach, federal courts, including those in this State, have repeatedly approved attorneys' fees in the amount of one-third (1/3) of the common settlement fund in collective and class cases under the FLSA and WWPCL. (*See id.* ¶ 26 (collecting cases).) Further, it is consistent with the rate utilized by other practitioners in this State, as well as with Plaintiff's Counsel's fee agreement with Plaintiff. (*See id.* ¶ 25.) Finally, should this Court conduct a lodestar cross-check, Plaintiff's Counsel believes that their requested fees are reasonable in comparison to the lodestar calculation.

For all such reasons, Plaintiff's Counsel submits that their requested award of attorneys' fees and costs is reasonable and consistent with common fund recovery principles.

### c.    Effectiveness of proposed method of distributing relief

The Parties' proposed method for distributing relief to the WWPCL Class includes appointment of Rust Consulting as the settlement administrator. Rust will employ a well-established protocol for providing notice to putative members of the WWPCL Class and then processing requests for exclusions, consents to join, and objections. After the Settlement Effective date and passing of all applicable deadlines, Defendant will provide Rust Consulting with a spreadsheet confirming the amount of each settlement check payable from the Net Settlement Fund to the Settlement Class. (Settlement Agreement § IV.B.)   Rust Consulting will then issue settlement checks to each member of the Settlement Class. (*Id.* § IV.D.) Settlement checks will expire 60 days after issuance. (*Id.* § IV.E.) If the Parties or Rust Consulting learn that a member of the Settlement Class did not receive or lost his or her settlement check, Rust Consulting will issue a stop payment order and issue replacement checks. (*Id.*) Replacement settlement checks will expire 60 days after issuance. (*Id.* § IV.G.) If any settlement checks are returned as undeliverable, Rust Consulting will take appropriate steps to identify and mail the settlement checks to an alternative address. (*Id.* § IV.F.) Any settlement checks that remain undeliverable, cannot be mailed to an alternate address, or are returned or uncashed 60 days after issuance shall be void and revert to Defendant. (*Id.* § IV.G.)

### d.    Other agreements

Finally, neither the Parties nor their counsel have reached any other agreements affecting the settlement of this lawsuit other than the one before this Court.

### 4.    The Settlement Agreement treats WWPCL Class members equitably.

The monetary value of the Net Settlement Fund payable to participating Settlement Class members is anticipated to total $613,333.33. (Settlement Agreement § II.B.3.) This monetary value is approximately 111.9% of the total maximum amount Defendant calculated such individuals

could possibly recover (approximately $548,000.00). (*See* Walcheske Decl. ¶ 3.) Of that amount and pursuant to the agreed-upon structure of the Parties' Settlement Agreement, WWPCL Class members stand to automatically receive $208,244.13. (*See* ECF No. 20-1.) The Parties arrived at the negotiated Gross Settlement Amount by extrapolating the sum of the delta in minutes between punch in and shift start and shift end and punch out, over a six-month period for a sample set of 220 employees (110 who are currently active and 110 who are no longer employed by Defendant). (Walcheske Decl. ¶ 18.) The sample size represents 10.6% of the total potential class and collective members. (*Id.*) For the WWPCL Class, the Parties extrapolated this data across a two-year statute of limitations and used active employee headcounts on two separate dates (April 1, 2021, and May 19, 2022) to account for any variances in employee headcount from year to year. (*Id.*) Individual class member's recoveries were then allocated on a *pro rata* basis depending on the class member's number of workweeks worked, under the assumption that each employee who utilized Defendant's timekeeping system had compensable hours shaved vis-à-vis the same. (*Id.*) Such recoveries are reasonable given the relatively small claims at issue (concerning only minutes per day), and the risks and hurdles presented by the litigation. (*See id.* ¶¶ 13, 16-18.)

   **B.    The WWPCL Class satisfies the requirements for certification.**

   The Parties ask the Court to approve their Stipulation for Collective and Class Certification solely for purposes of effecting the Settlement Agreement. (ECF No. 21.) Despite the Parties' stipulation on the matter, however, the Court must still conduct a "rigorous analysis" and independently find the proposed settlement meets the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

Here, the WWPCL Class meets the four prerequisites of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy,[5] and the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3). In addition, the WWPCL Class also satisfies the implicit standard of definiteness. *See Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006.) The Parties' Stipulation for certification should be approved.

### 1. The WWPCL Class is sufficiently numerous.

The WWPCL Class is so numerous that joinder is impracticable. While there is not an explicit cut-off, the Seventh Circuit has found classes of 40 people to be sufficient. *Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *see also Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 837 (W.D. Wis. 2018). In this case, the Parties have identified a putative WWPCL Class of 2,571 people. (*See* ECF No. 20-1.) This number is sufficiently numerous to make joining all potential class members impracticable. The WWPCL Class satisfies the numerosity requirement.

### 2. Common questions of law and fact predominate.

The claims of the WWPCL Class turn on common questions of fact and law. The common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

In this case, some questions common to the WWPCL Class include, but are not limited to: whether the class members performed compensable work after they punched in but before shift start and/or after shift end but before they punched out such that their "punch times" are representative of their hours worked; whether Defendant's timekeeping and rounding practices

---

[5] The Parties already addressed the adequacy requirement in section I.A.1., above.

violated the WWPCL; and whether Defendant knew class members performed compensable work before shift start and after shift end.

In short, a common timekeeping practice unites all class members, and as such, a determination of the above factual and legal issues would resolve every WWPCL Class members' claims in one stroke. When challenging a uniform policy, the validity of those policies predominate over individual issues and class certification is appropriate. *Blihovde v. St. Croix Cnty.*, 219 F.R.D. 607, 620 (W.D. Wis. 2003) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 147 n.20 (1982)). Further, where a uniform policy is challenged, individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id*. Accordingly, the WWPCL Class satisfies the commonality requirement.

### 3. Plaintiff's claims are typical of the WWPCL Class.

The typicality requirement is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The typicality requirement, however, focuses only on whether the plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. *Rosario*, 963 F.2d at 1018. Typicality focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

Plaintiff is a member of the WWPCL Class. The legal theories advanced by Plaintiff – that Defendant failed to compensate her for all hours spent donning and doffing protective equipment and performing all other required safety measures and rounded and unlawfully shaved her hours worked, thus depriving her of compensation for all hours worked – apply equally to Plaintiff and the class members she seeks to represent. Because Plaintiff's claims involve the same legal theories and arise from the same course of conduct that gives rise to the claims of the WWPCL Class, the typicality element is satisfied.

### 4.     A class action is the best method for resolution.

The WWPCL Class further satisfies the four nonexclusive factors under Rule 23(b)(3)'s superiority requirement: (a) the interests of the class members in controlling the prosecution of their own claims; (b) the existence of other pending litigation related to the same controversy; (c) the desirability of concentrating the claims in one forum; and (d) the difficulty of managing the class. Fed. R. Civ. P. 23(b)(3).

First, the Parties are unaware of any other pending litigation regarding the claims asserted by the WWPCL Class under Rule 23(b)(3)(B). Second, there are no difficulties in managing a class action because the case has settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Third, the class members' interests in individually controlling the prosecution of separate actions are outweighed by the efficient resolution of their claims where litigating each claim would be expensive and time consuming. *See Behrens v. Landmark Credit Union*, No. 17-cv-101-jdp, 2018 WL 3130629, at *4 (W.D. Wis. June 26, 2018). Lastly, litigation of the WWPCL Class claims in this forum is appropriate where the alleged conduct occurred in this District and most class members reside in this District. *See Burch v. Qwest Commc'ns Int'l, Inc.*, 677 F. Supp. 2d 1101, 1129 (D. Minn. 2009) (efficient to center nearly identical boot-up claims in one forum). For all

these reasons, class action is a superior method to resolve the claims of the WWPCL Class and the Court should grant class certification for settlement purposes.

### 5.      The WWPCL Class is definite and ascertainable.

In addition to the standards stated in Fed. R. Civ. P. 23(a) and 23(b), federal courts have recognized two implicit ones: (1) the proposed class definition must be definite – that is, ascertainable, precise, and objective; and (2) Plaintiff must be a member of the class she represents. *Blihovde*, 219 F.R.D. at 614.

The members of the WWPCL Class are definite. The parties have identified these individuals and have calculated their specific, alleged amounts owed. (*See* ECF No. 20-1.) The WWPCL Class's definition does not include any subjective criteria and is not a fail-safe class. The WWPCL Class includes all hourly-paid production employees employed by Defendant in Wisconsin between April 26, 2020, and April 26, 2022. (Settlement Agreement § I.C.) As a former hourly-paid production employee employed by Defendant during the statutory period, Plaintiff is a member of the WWPCL Class as defined. Both implicit standards have been met.

### C.      The Parties' stipulated certification and settlement of the FLSA Collective are similarly reasonable and appropriate.

For the same reasons the Court "will likely be able to" certify the WWPCL Class and approve the proposed settlement as a fair, reasonable, and adequate resolution of disputed claims after a final hearing, so too, is certification of the FLSA Collective reasonable and approval of the Parties' settlement of those claims appropriate. The standards for approval of the settlement of FLSA collective actions "track the considerations that the court must weigh for reviewing proposed class action settlements under Rule 23." *Smoot v. Wieser Bros. Gen. Contractors, Inc.*, No. 15-cv-424-jdp, 2016 WL 1736498, at *6 (W.D. Wis. Apr. 29, 2016.) Similarly, "despite the difference between a collective action and a class action…there isn't a good reason to have

different standards for…certification…and the case law has largely merged the standards, though with some terminological differences." *Id.* at \*4 (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013).)

  The Parties seek to certify the FLSA Collective for purposes of settlement, and a one-step settlement approval process of the FLSA Collective is appropriate here. While most courts in this Circuit follow a two-step process to determine whether an FLSA lawsuit should proceed as a collective action, several courts have found that a one-step settlement approval process is appropriate. *Neubauer v. Sperl Inc.*, No. 22-cv-236-slc, 2022 WL 17586952, at \*2 n.2 (W.D. Wis. Oct. 21, 2022) (citing cases). Collective actions require putative members to affirmatively opt-in to participate and those who choose not or fail to do so, retain their right to bring an individual suit in the future. *Benoskie v. Kerry Foods, Inc.*, No. 19-cv-684-pp, 2020 WL 5769488, at \*2 (E.D. Wis. Sept. 28, 2020) (citations omitted). This opt-in procedure, as provided for in the Parties' Settlement Agreement, does not present the same due process concerns present in an opt-out Rule 23 class action. *See id.* (citations omitted). Absent due process concerns, the relevant inquiry is thus whether the putative collective is sufficiently similarly situated to proceed on a representative basis. *See* 29 U.S.C. § 216(b).

  Certification of the FLSA Collective is appropriate in this case for the same reasons the Parties' stipulation to class certification should be approved. While the putative WWPCL Class consists of 2,571 individuals, the putative FLSA Collective includes those 2,571 individuals plus an additional 1,536 more who worked for Defendant in Mississippi and Idaho. (*See* ECF No. 20-1.) And although Defendant did not have a uniform timekeeping and rounding policy across all three locations, Plaintiff's Rounding and Donning and Doffing Claims are based on the same premise: that Defendant's hourly paid employees (regardless of location) allegedly

performed uncompensated work before shift start and/or after shift end. The Parties stipulate that the employees eligible to participate in the FLSA Collective are similarly situated, making resolution of these claims on a collective basis the most efficient method for resolving what would otherwise require 4,107 separate evidentiary hearings on damages.

The Parties' proposed settlement of the FLSA Collective is also likely to be approved. "To determine the fairness of a settlement under the FLSA, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Smoot*, 2016 WL 1736498, at *6 (citing *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010). The factors the court considers include: (1) the complexity, expense, and likely duration of the case; (2) the reaction of collective members to the settlement; (3) the stage of the case and discovery completed; (4) the risk of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through trial; (7) the ability of defendant to withstand a larger judgment; (8) the reasonableness of the settlement in light of the best possible recovery; and (9) the reasonableness of the settlement in light of the risks of continued litigation. *Id.* These factors track the Court's considerations when determining whether to approve a class action under Rule 23. For the same reasons provided above, the Parties believe their proposed settlement of the FLSA Collective claims should also be approved.

### D.     The Parties' proposed Notice Packet and manner of service are appropriate.

The Parties proposed Notice Packet provides the best notice practicable to all members of the WWPCL Class and FLSA Collective. The Notice Packet consists of two different notices, depending on the recipient's location and, as a result, inclusion in the WWPCL Class. (*See* ECF Nos. 20-2, 20-3; *see also* Walcheske Decl. ¶ 14.)

Both notices satisfy Rule 23(c)(2)(B) because they clearly and concisely explain: the nature of the action, the definition of the FLSA Collective and WWPCL Class, the Parties' claims and defenses, that a class member may enter an appearance through an attorney, and the binding effect of a class judgment. The notices further provide Plaintiff's Counsel's contact information and inform recipients they have 45 calendar days after the date the initial Notice Packet is mailed (the "Notice Period") to opt-into the FLSA Collective, object to the Settlement Agreement, or request exclusion from the opt-out WWPCL Class, as applicable. (Settlement Agreement § III.B.)

The Parties further believe that the method of providing notice, via U.S. first class mail, is the best method under the circumstances, given that Defendant does not maintain email addresses for its hourly-paid production employees. (Walcheske Decl. ¶ 15.) The Parties have engaged Rust Consulting as the Settlement Administrator to ensure notice of the lawsuit and proposed settlement is handled appropriately and effectively. (*See* Settlement Agreement §§ III.B.3., IV.F.) And again, as previously explained in section II.C., above, Rust Consulting will use additional resources, and the Parties agree to cooperate and assist, to identify an updated mailing address for any initial Notice Packet that is returned as undeliverable.

For all such reasons, the Parties believe that the Notice Packet and its method of transmission provide the best notice practicable to all WWPCL Class and FLSA Collective members.

## II.    THE SETTLEMENT AGREEMENT SETS FORTH THE REMAINING PROCEDURE FOLLOWING PRELIMINARY APPROVAL.

The Court's entry of the proposed Preliminary Approval Order (ECF No. 18-1) would, among other things, (a) certify for settlement purposes the WWPCL Class and FLSA Collective; (b) appoint Plaintiff as representative of the WWPCL Class and FLSA Collective; (c) appoint Walcheske & Luzi, LLC as class counsel for the WWPCL Class and FLSA Collective; and

(d) direct notice of the lawsuit and proposed settlement to all members of the WWPCL Class and

FLSA Collective. As set forth in the Settlement Agreement, the Parties propose the following

schedule for Notice, a Fairness Hearing, and related dates:

| Deadline | Action |
|---|---|
| Within five business days of the Court's Preliminary Approval Order | Defendant to provide Rust Consulting with the names and last-known addresses of all putative members of the WWPCL Class and FLSA Collective (Settlement Agreement § III.B.1.) |
| Within fifteen business days of the Court's Preliminary Approval Order | Rust Consulting to send copy of Court-approved Notice Packet to all putative members of the WWPCL Class and FLSA Collective via U.S. first-class mail, with the 45 calendar days following the postmark constituting the "Notice Period" (*Id.* § III.B.2.) |
| Expiration of Notice Period | Deadline for putative FLSA Collective members to consent to join and putative WWPCL Class members to request exclusion from and/or object to the Settlement Agreement (*Id.* §§ III.C.-E.) |
| Fourteen days prior to Fairness Hearing | The Parties shall file any supplemental brief in support of final approval of the Settlement Agreement, and Plaintiff's Counsel shall file their brief in support of their requested award of fees and costs and Plaintiff's service award. (*Id.* § III.G.) |
| Seven days prior to Fairness Hearing | Defendant shall file any brief opposing Plaintiff's motion for service award. |
| Approximately 120 days after entry of Preliminary Approval Order | Fairness Hearing (*Id.* §§ III.F.-G.) |

## CONCLUSION

For all the reasons stated above, the parties respectfully request that the Court enter an

order that: (1) preliminarily approves the Settlement Agreement; (2) certifies, for settlement

purposes only, the proposed FLSA Collective and WWPCL Class; (3) appoints Walcheske & Luzi,

LLC as Class Counsel; (4) appoints Plaintiff Karrie Ackley as representative for the FLSA

Collective and WWPCL Class; (5) appoints Rust Consulting as the Settlement Administrator;

(6) approves the Notice Packet for distribution to putative members of the Settlement Class;

(7) finds that delivery of the Notice Packet by U.S. mail to the putative Settlement Class constitutes

the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice

in full compliance with the requirements of applicable law, including the Due Process Clause of

the United States Constitution; (8) directs that putative Settlement Class members who wish to join the FLSA Collective, request exclusion from the Settlement Agreement, or object to the Settlement Agreement, must do so pursuant to the steps set forth in the Parties' Notice Packet and within 45 days of mailing of the Notice Packet; (9) finds that any objection that is untimely or otherwise does not comply with the instructions set forth in the Notice Packet will not be heard by the Court; (10) finds that any WWPCL Class member who does not properly and/or timely exclude him/herself shall be bound by the Court's Final Approval Order; (11) directs that any final approval motion, Plaintiff's motion for approval of attorneys' fees and costs and for approval of service award, and any responses to objections to attorneys' fees and costs shall be filed no later than fourteen days prior to the Fairness Hearing; (12) directs that any response or objection to Plaintiff's motion for approval of service award shall be filed no later than seven days prior to the Fairness Hearing; and (13) schedules a Fairness Hearing approximately 120 days after the Court's Preliminary Approval Order.

Dated this 6th of June, 2023.

**WALCHESKE & LUZI, LLC**
Counsel for Plaintiff

 s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, State Bar No. 1067009
WALCHESKE & LUZI, LLC
235 North Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com
Email: dpotteiger@walcheskeluzi.com
Telephone: (262) 780-1953

**GODFREY & KAHN, S.C.**
Counsel for Defendant

 s/ *Erin M. Cook*
Josh Johanningmeier, State Bar No. 1041135
Erin M. Cook, State Bar No. 1074294
Sarah K. Mueller, State Bar No. 1114561
GODFREY & KAHN, S.C.
833 E. Michigan Street, Suite 1800
Milwaukee, Wisconsin 53203
Email: jjohanningmeier@gklaw.com
Email: mcook@gklaw.com
Email: smueller@gklaw.com
Telephone: (414) 273-3500

29355607.2