## **SETTLEMENT AGREEMENT & RELEASE**

This Settlement Agreement and Release (the "Agreement") is entered into by and between Karrie Ackley ("Named Plaintiff"), individually and on behalf of the FLSA Collective and WWPCL Class as defined in Sections I.B and C, respectively, and Marathon Cheese Corporation ("Defendant").

## **RECITALS**

WHEREAS, on April 26, 2022, Named Plaintiff filed a collective and class action complaint in the United States District Court for the Western District of Wisconsin (the "Court"), asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended ("FLSA"), and the Wisconsin Wage Payment and Collection Laws, Wis. Stat. §§ 103.001 *et seq.*, 104.01 *et seq.*, 109.01 *et seq.* and Wis. Admin. Code §§ DWD 272.001 *et seq.* and 274.01 *et seq.* ("WWPCL"), captioned *Karrie Ackley v. Marathon Cheese Corporation*, Case No. 3:22-cv-00232 (the "Lawsuit");

WHEREAS, in the Lawsuit, Named Plaintiff alleges that Defendant: (1) rounded time from hourly, nonexempt production employees' weekly timesheets to the detriment of said employees and to the benefit of Defendant, and (2) failed to compensate hourly, nonexempt production employees for pre-shift and post-shift hours worked when said employees were donning and doffing food processing-related protective gear and other equipment;

WHEREAS, the Court has not yet certified a class or collective in the Lawsuit;

WHEREAS, while Named Plaintiff believes her claims have merit, she recognizes that the settlement avoids the risks, expenses, and delays associated with continued litigation of the Lawsuit, so that she believes, following a full investigation into the facts and law associated with the Lawsuit, that settlement of the Lawsuit on the terms outlined in this Agreement is in the best interest of both herself and the potential class and collective members, and represents a fair, reasonable, and adequate settlement of a bona fide dispute under the FLSA and WWPCL;

WHEREAS, Defendant denies the allegations in the Lawsuit and any and all liability and damages of any kind to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Notwithstanding, and without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Lawsuit; and

WHEREAS, this Agreement reflects the understanding of the parties.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the parties agree to a full and complete settlement of the claims alleged in the Lawsuit on the following terms and conditions.

# AGREEMENT

I. **STIPULATION OF CLASS AND COLLECTIVE**

    A.    <u>Settlement</u>. It is agreed by and among the parties that this Lawsuit, and any claims, damages, or causes of action arising out of or related to the dispute, which is the subject of said Lawsuit, be settled and compromised as among the Named Plaintiff, FLSA Collective, WWPCL Class, and Defendant, subject to Court approval and pursuant to the terms and conditions set forth in this Agreement.

    B.    For purposes of settlement only, the parties seek conditional certification of the following opt-in settlement class pursuant to 29 U.S.C. § 216(b):

> <u>FLSA Collective</u>. All hourly-paid production employees employed by Defendant between April 26, 2019, and April 26, 2022, as identified in **Exhibit A** to this Agreement and who file a Consent to Join Form within 45 calendar days of the postmark date on the Notice Packet.

    C.    For purposes of settlement only, the parties seek class certification of the following opt-out settlement class pursuant to Fed. R. Civ. P. 23:

> <u>WWPCL Class</u>. All hourly-paid production employees employed by Defendant in Wisconsin between April 26, 2020, and April 26, 2022, as identified in **Exhibit A** to this Agreement and who do not file a Request to Exclude within 45 calendar days of the postmark date on the Notice Packet.

    D.    The FLSA Collective and WWPCL Class are hereafter collectively referred to as the Settlement Class.

II. **SETTLEMENT AMOUNT**

    A.    <u>Gross Settlement Amount</u>. Defendant agrees to pay up to the maximum Gross Settlement Amount of $950,000 in full and final resolution of the Lawsuit. This Gross Settlement Amount is inclusive of regular and overtime wage damages, liquidated damages, attorneys' fees and costs ("Fees and Costs"), and service award ("Service Award"). Defendant will not be required to pay any amounts more than the Gross Settlement Amount, with the exception of employer payroll taxes on the wage portion of amounts paid pursuant to Section II.B.3., below, and the cost of settlement administration.

    B.    <u>Allocation of Gross Settlement Amount</u>.

      1. **Fees and Costs.** Walcheske and Luzi, LLC ("Class Counsel") will move the Court for an award of $316,666.67 from the Gross Settlement Amount as an award of Fees and Costs, which Defendant will not oppose. The Fees and Costs awarded by the Court shall constitute full satisfaction of any claim for attorneys' fees and/or costs, and so long as Defendant fully complies with the terms of this Agreement, Named Plaintiff and

the Settlement Class agree they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this Lawsuit.

   2. **Service Award.**  Class Counsel will move the Court for an award of $20,000 from the Gross Settlement Amount as a Service Award to Named Plaintiff for the services she rendered in the Lawsuit. Defendant will oppose Class Counsel's application for a Service Award to Named Plaintiff. Any Service Award approved by the Court and any requirement for obtaining such payment is separate and apart from, and in addition to, Named Plaintiff's recovery from the Gross Settlement Amount as a member of the Settlement Class.

   3. **Net Settlement Fund.**  Should the Court approve the Fees and Costs and Service Award in the amounts identified in Sections II.B.1 and 2, respectively, the remaining Net Settlement Fund will be $613,333.33:

   i.  Each member of the FLSA Collective will receive payment in the individual amount listed in the "FLSA Collective" column of **Exhibit A**, 50% of which shall be construed as payment of wages owed and 50% as payment of liquidated damages.

   ii.  Each member of the WWPCL Class will receive payment in the individual amount listed in the "WWPCL Class" column of **Exhibit A**, 50% of which shall be construed as payment of wages owed and 50% as payment of liquidated damages.

   4. **Additional Distribution.**  In the event the Court awards Fees and Costs in an amount less than $316,666.67, and/or a Service Award in an amount less than $20,000, the sum of the difference between the amounts sought and the amounts awarded ("Additional Distribution") shall be added to the Net Settlement Fund and distributed to the individuals identified on **Exhibit A** on a pro-rata basis, with 50% construed as payment for wages owed and 50% as liquidated damages. Any portion of the Additional Distribution that is attributable to members of the putative FLSA Collective who fail to properly and timely opt-in to the FLSA Collective and every member of the putative WWPCL Class who properly and timely opt out of the WWPCL Class shall revert to Defendant.

   C.   Tax Characterization of Payments.

   1. Fifty percent of the payment from the Net Settlement Fund to each member of the Settlement Class will represent wages and will be less all applicable employment taxes, including federal, state, and local income tax withholding and the employee share of the FICA tax, and reported to the IRS and the payee under the payee's name and Social Security number on an IRS Form W-2.

   2. Fifty percent of the payments from the Net Settlement Fund to each member of the Settlement Class will represent statutory liquidated damages and will be made without withholding and reported to the IRS via Form 1099. Defendant shall only report

3

non-wage payments to the IRS if the payment to a member of the Settlement Class equals or exceeds $600.

    3. The employee portion of all applicable income and payroll taxes will be the sole responsibility of the member of the Settlement Class receiving payment pursuant to this Agreement. The parties and their counsel make no representations as to the taxability of any portions of the settlement payments to the Settlement Class. Neither Class Counsel nor Godfrey & Kahn, S.C. ("Defendant's Counsel") intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

    4. None of the amounts paid to Class Counsel, Named Plaintiff, and/or the Settlement Class shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements, or policies sponsored, maintained, or contributed to by Defendant, including for purposes of any bonus of any kind.

    5. The payment of Fees and Costs will be made to Class Counsel, subject to Class Counsel providing Rust Consulting (the "Settlement Administrator") a completed W-9 Form in a timely manner, shall be without withholding and reported to the IRS via Form 1099.

    6. The payment of the Service Award will be made to Named Plaintiff, subject to Named Plaintiff providing the Settlement Administrator a completed W-9 Form in a timely manner, shall be without withholding and reported to the IRS via Form 1099.

## III. JUDICIAL APPROVAL AND NOTICE TO SETTLEMENT CLASS

    A. <u>Preliminary Approval of Settlement</u>. Named Plaintiff shall file with the Court, subject to Defendant's comment and approval, a Joint Motion for Preliminary Settlement Approval along with this Agreement and its exhibits, any supporting declarations, and a proposed order (collectively, "Approval Motion"). Among other things, the Approval Motion will ask the Court to enter a Preliminary Approval Order:

    1. Preliminarily approving the settlement memorialized in this Agreement as fair, reasonable, and adequate;

    2. Certifying the FLSA Collective as a collective action under 29 U.S.C. § 216(b) for the purpose of settlement only;

    3. Certifying the WWPCL Class as a class action under Fed. R. Civ. P. 23 for the purpose of settlement only;

    4. Appointing Named Plaintiff as the representative of the FLSA Collective and WWPCL Class for the purpose of settlement only;

    5. Appointing Walcheske & Luzi, LLC as counsel for the FLSA Collective and WWPCL Class for the purpose of settlement only;

6. Appointing Rust Consulting as the Settlement Administrator;

7. Approving the content of the Notice of Class and Collective Action and Proposed Settlement substantially in the form of **Exhibit B** for distribution to putative members of the FLSA Collective who are not eligible to participate in the WWPCL Class, and **Exhibit C** for distribution to putative members of the FLSA Collective who are members of the putative WWPCL Class (collectively, the "Notice Packet");

8. Finding delivery of the Notice Packet by U.S. Mail to the putative Settlement Class to constitute the best notice practicable under the circumstances, and constitute valid, due, and sufficient notice to the putative Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution; and

9. Scheduling a Fairness Hearing approximately 120 days after the Court issues its Preliminary Approval Order.

B.  <u>Distribution of Notice Packet</u>.

1. Within 5 business days of the Court entering a Preliminary Approval Order, Defendant will provide the Settlement Administrator a list of names and last known addresses of all members of the putative Settlement Class, according to records maintained by Defendant.

2. Within 15 business days of the Court's Preliminary Approval Order, the Settlement Administrator will send a copy of the applicable Notice Packet to all members of the putative Settlement Class via U.S. first class mail. The 45 calendar days following the postmark date on the Notice Packets is the "Notice Period."

3. During the Notice Period, if any Notice Packet is returned as undeliverable, the Settlement Administrator shall take other appropriate steps to identify and mail the Notice Packet to an alternative address for the respective member of the putative Settlement Class. Such additional mailings do not extend the Notice Period.

C.  <u>Consent to Join</u>.  Any member of the putative FLSA Collective who wishes to be included in the FLSA Collective must return a signed Consent to Join Form, pursuant to the instructions in the Notice Packet, to the Settlement Administrator before the Notice Period expires. During the Notice Period, the Settlement Administrator shall promptly provide to Class Counsel and Defendant's Counsel all Consent to Join Forms from members of the putative FLSA Collective, which Class Counsel shall promptly file with the Court. Any member of the putative FLSA Collective who submits a timely Consent to Join Form shall be subject to and bound by this Agreement and every order or judgment entered pursuant to this Agreement.

D.  <u>Request to Exclude</u>. Any member of the putative WWPCL Class who wishes to be excluded from the Settlement Class must return a signed Request to Exclude, pursuant to the instructions in the Notice Packet, to the Settlement Administrator before the Notice Period expires. During the Notice Period, the Settlement Administrator shall promptly provide to Class Counsel and Defendant's Counsel all Requests to Exclude from members of the putative

5

WWPCL Class, which Class Counsel shall promptly file with the Court. Any member of the putative WWPCL Class who fails to submit a timely Request to Exclude shall be subject to and bound by this Agreement and every order or judgment entered pursuant to this Agreement.

      E.    <u>Objection to Settlement</u>.  Any member of the Settlement Class who intends to object to the fairness of this Agreement must file any such objection with the Court before the Notice Period expires. Any objection to the Agreement must include: (i) the objector's full name, address, and telephone number; (ii) a written statement of all grounds for the objection, including any legal support for the objection; (iii) copies of any papers, briefs, or other documents upon which the objection is based; (iv) a list of all persons who will be called to testify in support of the objection; and (v) a statement whether the objector intends to appear at the Fairness Hearing. If the objector intends to appear at the Fairness Hearing through counsel, the objection must also state the identity of all attorneys representing the objector who will appear at the Fairness Hearing. Any member of the Settlement Class who fails to file a timely written objection to this Agreement addressing each requirement in this subsection, shall be foreclosed from seeking any adjudication or review of any Court order approving the Agreement, by appeal or otherwise.

      F.    <u>Fairness Hearing</u>. On the date set forth in the Preliminary Approval Order or by such other order of the Court, a Fairness Hearing shall be held at which the Court will (i) decide whether to certify the putative Settlement Class; (ii) decide whether to approve the Agreement as fair, reasonable, and adequate; (iii) decide Class Counsel's motion for attorneys' fees and costs; and (iv) decide Named Plaintiff's motion for service award.

      G.    <u>Entry of Final Order Approving Settlement</u>.  No later than 14 calendar days before the Fairness Hearing, Class Counsel shall file with the Court (i) subject to Defendant's comment and approval, a joint motion for final approval, any supporting declarations, and a proposed order; and (ii) motions for Fees and Costs and Service Award, any supporting declarations, and proposed orders (collectively, "Final Approval Motion"). Among other things, the Final Approval Motion will ask the Court to enter a Final Order:

    1. Certifying the FLSA Collective pursuant to 29 U.S.C. § 216(b) and the WWPCL Class pursuant to Fed. R. Civ. P. 23;

    2. Approving the Agreement as fair, reasonable, and adequate as it applies to the Settlement Class;

    3. Declaring the Agreement to be binding on Named Plaintiff, the Settlement Class, and Defendant;

    4. Dismissing with prejudice the claims of Named Plaintiff and the Settlement Class;

    5. Indicating the amount of Fees and Costs awarded to Class Counsel and Service Award to Named Plaintiff; and

    6. Dismissing the Lawsuit on the merits and with prejudice.

## IV. SETTLEMENT EFFECTIVE DATE AND ADMINISTRATION

A.  <u>Settlement Effective Date</u>.  This Agreement shall be deemed effective 10 business days after the earliest of the following: (1) the Court enters a Final Order dismissing the Lawsuit with prejudice, if no member of the Settlement Class timely objects to the Agreement; (2) the deadline for appealing the Final Order, if any member of the Settlement Class timely objects to the Agreement, but does not file a timely appeal; or (3) the date all appeals are resolved, if any member of the Settlement Class timely objects to the Agreement and timely appeals the Final Order.

B.  <u>Confirmation of Settlement Award Payments</u>. Within 5 business days of the Settlement Effective Date, Defendant shall provide the Settlement Administrator a spreadsheet confirming the amount of each Settlement Check payable from the Net Settlement Fund to the Settlement Class.

C.  <u>Payment of Gross Settlement Amount</u>.  Within 10 business days of the Settlement Effective Date, Defendant shall pay the Settlement Administrator the Gross Settlement Amount less any unclaimed funds specifically allocated to members of the putative WWPCL Class who properly and timely opted-out of the WWPCL Class and members of the putative FLSA Collective who failed to properly and timely opt-in to the FLSA Collective, which unclaimed funds shall revert to Defendant.

D.  <u>Check Distribution</u>. Within 10 business days of receipt of the payment made pursuant to Section IV.C., the Settlement Administrator shall issue Settlement Checks to: (i) each member of the Settlement Class in the amounts confirmed in Section IV.B.; (ii) Named Plaintiff in the amount of the court-approved Service Award; and (iii) Class Counsel in the amount of the court-approved Fees and Costs.

E.  <u>Settlement Check Void Date</u>.  Settlement Checks issued pursuant to this Agreement shall expire upon the Settlement Check Void Date, which is 60 days after issuance. After the Settlement Check Void Date, the Settlement Administrator will issue a stop payment order on all uncashed or returned Settlement Checks. If, before the Settlement Check Void Date, the Settlement Administrator or Class Counsel becomes aware that a member of the Settlement Class did not receive or lost his or her Settlement Checks, the Settlement Administrator shall issue a stop payment order and issue replacement checks. In no event shall a member of the Settlement Class be issued replacement checks until any prior checks sent to them have been canceled. The Settlement Administrator may not issue a third set of Settlement Checks to any member of the Settlement Class without written authorization from Defendant.

F.  <u>Settlement Checks Returned as Undeliverable</u>. If any Settlement Checks are returned as undeliverable, the Settlement Administrator shall, within 5 business days from receipt of the undeliverable checks, take other appropriate steps to identify and mail the Settlement Checks to an alternate address for the respective member of the Settlement Class. If the Settlement Checks are returned by the postal service after a second mailing as undeliverable or an alternative address cannot be identified, the parties shall be deemed to have satisfied their obligation to deliver such Settlement Checks.

   G. <u>Uncashed Settlement Checks</u>. Any Settlement Check that remains undeliverable, cannot be mailed to an alternative address, or is returned or uncashed within 60 days after issuance, shall be void and revert to Defendant ("Uncashed Settlement Checks"). The Settlement Administrator shall provide an accounting to Class Counsel and Defendant's Counsel of all Uncashed Settlement Checks no later than 70 calendar days after the date of issuance of the last-issued Settlement Checks. No later than 5 business days after providing the accounting of Uncashed Settlement Checks, the Settlement Administrator shall mail a check in the amount of the Uncashed Settlement Checks to Defendant's Counsel, c/o Erin M. Cook, Godfrey & Kahn, S.C., 833 East Michigan Street, Suite 1800, Milwaukee, Wisconsin 53202.

**V. RELEASE OF CLAIMS**

   A. <u>Release by Named Plaintiff</u>. Upon the Court entering a Final Order, Named Plaintiff and her predecessors, successors, heirs and assigns, in addition to her legal representatives, will be deemed to have fully, finally, and forever released Defendant and its past, present, and future parent, subsidiary, affiliated, and related entities and each of their respective past, present, and future owners, directors, principals, stockholders, managers, members, partners, agents, insurers, attorneys, representatives, independent contractors, employees, successors, and assigns (collectively, the "Released Parties") from any and all claims, debts, complaints, demands, suits, actions, and causes of action of any kind, which are releasable by law and arise out of or are in any manner based upon or related to the employment relationship between Named Plaintiff and Defendant at any time on or before the Court's entry of a Final Order. Without limiting the generality of the foregoing, this release applies to any and all claims under the Occupational Safety and Health Act, Equal Pay Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Fair Labor Standards Act, Employee Retirement Income Security Act, 42 U.S.C. §§ 1981, 1983, and 1985, the Rehabilitation Act of 1973, Executive Orders 11246 and 11375, Chapters 103 and 109 of the Wisconsin Statutes, as each may be amended from time to time, and any other local, state, or federal statute, rule, regulation, or executive order, whether statutorily codified or not, governing discrimination in employment, the payment of wages and benefits, or arising in contract, tort, or equity.

   B. <u>Release by FLSA Collective</u>. Upon the Court entering a Final Order, all members of the FLSA Collective will be deemed to have fully, finally, and forever released the Released Parties from any and all wage and hour claims, debts, complaints, demands, suits, actions, and causes of action under federal law (including, without limitation, the FLSA) relating to or arising from the facts and claims alleged in the Lawsuit at any time on or before the Court's entry of a Final Order.

   C. <u>Release by WWPCL Class</u>. Upon the Court entering a Final Order, all members of the WWPCL Class will be deemed to have fully, finally, and forever released the Released Parties from any and all wage and hour claims, debts, complaints, demands, suits, actions, and causes of action under state law (including, without limitation, the WWPCL) relating to or arising from the facts and claims alleged in the Lawsuit at any time on or before the Court's entry of a Final Order.

## VI. MISCELLANEOUS TERMS

A. <u>Voiding the Agreement</u>. If the Court fails to approve this Agreement, the parties agree to, in good faith, negotiate modifications to the terms of this Agreement to address the Court's concerns. If the parties are unable to agree on modified terms, they agree to notify the Court and this Agreement will be null and void and Defendant will have no obligation to make any payments under this Agreement. Thereafter, the parties will resume litigation of the Lawsuit as if this attempt to settle the Lawsuit never took place.

B. <u>No Admission of Liability</u>. By entering into this Agreement, Defendant admits no liability of any kind, and Defendant expressly denies any liability or wrongdoing. Accordingly, the parties agree that neither of them has prevailed, nor will this Agreement be construed as evidence that any party has prevailed in this matter. This Agreement will not be admissible in any court or other proceeding except as necessary in connection with a claim of breach of this Agreement or an effort to enforce this Agreement.

C. <u>Agreement to Cooperate</u>. The parties acknowledge that it is their intent to consummate this settlement, and they agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

D. <u>No Assignment</u>. The parties represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim, or any portion thereof, or interest therein, including, but not limited to, any interest in the claims alleged in the Lawsuit, or any related action or claims, and any attempt to do so shall be of no force or effect.

E. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties regarding the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties.

F. <u>Binding Effect</u>. This Agreement shall be binding upon the parties and, with respect to the Named Plaintiff, her spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

G. <u>Arms' Length Transaction</u>. The parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the parties in entering into this Agreement, unless otherwise expressly stated.

H. <u>Captions</u>. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

I. <u>Construction</u>. The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties. Each party participated jointly in the drafting of this

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship. The provisions of this Agreement will be deemed severable, and the invalidity or unenforceability of any one or more of its provisions will not affect the validity or enforceability of any of the other provisions.

J.      Governing Law. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Wisconsin, except to the extent that the laws of the United States govern any matter set forth herein, in which case such federal law shall govern.

K.      Waivers in Writing. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties, and then only to the extent set forth in such written waiver, modification, or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any or all provisions of this Agreement.

L.      Counterparts. The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same original instrument. Any party may execute this Agreement by signing or by e-signature on the designated signature block below and transmitting that signature page via facsimile, e-mail, or other electronic means to counsel for the other party. Any signature made and transmitted by facsimile, e-signature, or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, e-signature, or e-mail.

M.      Non-Publication. Class Counsel and Named Plaintiff agree to make no public comment, communications to the media, or press release, including on any website or social media, regarding this settlement or Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year set forth below:

**KARRIE ACKLEY**                                   **MARATHON CHEESE CORPORATION**

_____     By: _____

Date: _____   Title: _____ CEO _____

                                                                    Date: ____ 4/3/23 ____

28593694.5

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship. The provisions of this Agreement will be deemed severable, and the invalidity or unenforceability of any one or more of its provisions will not affect the validity or enforceability of any of the other provisions.

J. <u>Governing Law</u>. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Wisconsin, except to the extent that the laws of the United States govern any matter set forth herein, in which case such federal law shall govern.

K. <u>Waivers in Writing</u>. No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties, and then only to the extent set forth in such written waiver, modification, or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any or all provisions of this Agreement.

L. <u>Counterparts</u>. The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same original instrument. Any party may execute this Agreement by signing or by e-signature on the designated signature block below and transmitting that signature page via facsimile, e-mail, or other electronic means to counsel for the other party. Any signature made and transmitted by facsimile, e-signature, or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, e-signature, or e-mail.

M. <u>Non-Publication</u>. Class Counsel and Named Plaintiff agree to make no public comment, communications to the media, or press release, including on any website or social media, regarding this settlement or Agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the d and year set forth below:

| **KARRIE ACKLEY** | **MARATHON CHEESE CORPORATION** |
|---|---|
| *[signature]* | By: _____ |
| Date: 3/29/2023 | Title: _____ |
| | Date: _____ |

28593694.5