IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KARRIE ACKLEY,
on behalf of herself and all others similarly situated,

|                |                      |
|----------------|----------------------|
| Plaintiff,     | OPINION and ORDER    |
| v.             | 22-cv-232-jdp        |

MARATHON CHEESE CORPORATION,

Defendant.

---

Plaintiff Karrie Ackley was an hourly worker on the production line for Marathon Cheese Corporation in its Marathon, Wisconsin processing facility. She contends that Marathon violated both the Fair Labor Standards Act (FLSA) and Wisconsin wage-and-hour laws by engaging in two related practices: (1) shaving time off the hours she worked before her shift starting time and after her shift stopping time, even when she was a clocked in (a practice the parties call "rounding"); and (2) failing to pay her for the time she spent donning and doffing protective gear. Ackley seeks to represent a collective under the FLSA of all Marathon's production employees in Wisconsin, Idaho, and Mississippi, and a class under Federal Rule of Civil Procedure 23 of Marathon's Wisconsin employees.

The parties have filed a renewed motion to certify a class and collective and to preliminarily approve their settlement. Dkt. 26. The court denied the first motion because of concerns about both class certification and the settlement. The court is satisfied for the most part with the additional explanations and revisions that the parties have provided. The court will not approve Ackley's request for a $20,000 service award, but the court will allow Ackley to renew that request with more support in her motion for final approval.

ANALYSIS

## A.  Certification of class and collective

Approval of the state-law class and settlement is governed by Federal Rule of Civil Procedure 23; approval of the federal collective and settlement is governed by 29 U.S.C. § 216(b). The language in the rule and statute is not identical, but both the court of appeals and this court generally have applied the Rule 23 standard to both state and federal wage-and-hour claims. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *Allen v. Lanier, Inc.*, No. 22-cv-268-jdp, 2023 WL 3529512, at *1 (W.D. Wis. May 18, 2023).

Under Rule 23, a class may be certified if it meets the following requirements: (1) the scope of the class and the class claims are clearly defined, Fed. R. Civ. P. 23(c)(1)(B); (2) the class is sufficiently numerous, Fed. R. Civ. P. 23(a); (3) the class includes common questions of law or fact, and is adequately represented by named plaintiffs who have claims typical of the class, *id.*; (3) class counsel is adequate, Fed. R. Civ. P. 23(g)(1); and (4) the class meets the requirements of at least one of the types of class actions listed in Rule 23(b). The parties in this case rely on Rule 23(b)(3), which applies when the common questions of law or fact predominate over individual ones and a class action is superior to other methods of adjudicating the case.

The court concludes that the parties have satisfied each of the relevant Rule 23 requirements for certification:

**Class definition.** The parties propose the following collective and class:

> **FLSA Collective**. All hourly-paid production employees employed by Defendant between April 26, 2019, and April 26, 2022, as identified in Exhibit A to this Agreement and who file a

Consent to Join Form within 45 calendar days of the postmark date on the Notice Packet.

**Wisconsin Class**. All hourly-paid production employees employed by Defendant in Wisconsin between April 26, 2020, and April 26, 2022, as identified in Exhibit A to this Agreement and who do not file a Request to Exclude within 45 calendar days of the postmark date on the Notice Packet.

The class and collective definitions are clearly defined, using objective criteria. The parties have confirmed in their renewed motion that the employees identified in Exhibit A include all of the employees who fit the class definition, not just a subset of those employees.

**Numerosity.** The parties represent that there are more than 2,500 members in the Wisconsin class and more than 4,000 potential members in the collective. That is more than numerous enough to make joinder impractical. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("[A] forty–member class is often regarded as sufficient to meet the numerosity requirement.").

**Commonality, typicality, and adequacy of the named plaintiff.** Plaintiffs are challenging two alleged practices in this case: (1) shaving time off the hours employees worked before their shift starting time and after their shift stopping time, even when the employees were clocked in; and (2) failing to pay employees for the time they spent donning and doffing protective gear. The parties acknowledge that these practices were not identical in different facilities in different states. But they say that Marathon had consistent practices of subtracting time before and after designated shift starting and stopping times and of requiring employees to don and doff protective gear. And they contend that the differences did not affect the legality of the practices.

In some cases, the court might require more information to determine whether the practices across facilities were sufficiently similar to show commonality, typicality, and

adequacy. But the court is persuaded that the differences are small enough to support certification of a class and collective. The individual damages in this case are literally a matter of nickels and dimes. The parties represent that Ackley's damages over a two-year period total $274; the average payout for an employee is approximately $150. So even if there is some variation among the practices, the differences would not be large enough to significantly change the damages for any one employee.

The court concludes that there are common questions among the class and collective members, Ackley's claims are typical of the class, and she is an adequate class representative.

**Adequacy of counsel.** Class counsel have significant experience litigating and obtaining settlements for similar class and collective actions. *See* Fed. R. Civ. P. 23(g)(1); Dkt. 29. The court will approve Walcheske & Luzi, LLC as class counsel.

**Predominance and Superiority.** The main issues in this case are whether Marathon's practices regarding rounding and donning and doffing comply with state and federal wage law. As explained above, those are common questions, so the court concludes that common questions predominate over individual ones. A class action is superior to other methods of adjudicating the case because the large size of the class and the small amount of damages for each class or collective member make individual lawsuits impractical. *See* Fed. R. Civ. P. 23(b)(3).

## B.  Preliminary approval

A court may grant preliminary approval of a settlement if the court "will likely be able to" find that the settlement is "fair, reasonable, and adequate" after a hearing. Fed. R. Civ. P. 30(e)(2).  Factors relevant to this determination include the adequacy of relief

to the class, the relative fairness of the settlement for each class member, and the reasonableness of the attorney fees. Fed. R. Civ. P. 23(e)(1)(B).

The settlement is structured as follows:

- The maximum amount that Marathon will pay to class members is $613,333.33, which results in an average payment of approximately $150 for each employee. Dkt. 20, § II.B.3. The largest amount for a single employee is $273.98. Dkt. 20-1.

- Each employee's pro-rata share is based on the number of weeks the employee worked during the "statutory period." Dkt. 21, ¶ 18.

- For employees who are potential members of both the class and the collective, half of the share is allocated to the employee's FLSA claims and half of the share is allocated to the state-law claims. Dkt. 20-1. Members of the collective who are not members of the Wisconsin class will not receive the other half, but those employees remain free to file their own state-law claims. Dkt. 20, § V.B.

- Plaintiffs will move for a $20,000 "service award" for Ackley. *Id.*, § II.B.2.

- Class counsel will move for $316,666.67 in fees. *Id.*, § II.B.1.

- Marathon will pay the administrator's costs. *Id.*, § II.A..

In its previous order, the court raised concerns about both the adequacy of relief to the class and the relative fairness of the settlement for each class member.[1] As for the adequacy of

---

[1] The court also raised potential concerns about the request for attorney fees because the requested amount—$316,666.67—would likely be significantly more than one-third of the sum of the fees and the ultimate payout to employees. But the court stated that it could not assess the reasonableness of counsel's fee under the percentage-of-recovery method until it is determined how many employees will opt in to the collective and how much Marathon will actually pay. (The portions of the settlement reserved for FLSA damages revert to Marathon for every employee who does not opt in to the collective.) Ackley's counsel is reminded that their motion for final approval must justify the requested amount of fees under the formula provided in *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), *and* the motion must comply with this court's procedures for fee petitions, which include providing the information necessary for a lodestar cross-check. If counsel cannot justify their fees under *Redman* or the lodestar method, they will have to either reduce their fee request or explain why this is an extraordinary case that justifies a higher fee award. *See* Dkt. 23, at 10–11.

relief, the parties failed to provide the court with enough information to determine adequacy because they did not explain in any detail how they reached their settlement amount.

In their renewed motion, the parties say that they used different methods to calculate damages for the different claims. Dkt. 29, ¶¶ 26–33. For the rounding claim, counsel calculated potential damages by looking at time logs for a random sampling of 110 current employees and 110 former employees and then using that data to estimate damages for all employees. Marathon does not have records regarding the time spent donning and doffing, so counsel relied on information provided by Ackley regarding her experience to estimate damages for all employees. Using both sets of information, counsel estimated that maximum damages for the class and collective were approximately $2,850,000 if Marathon's violations were willful and not in good faith, which would double each employee's damages and extend the FLSA statute of limitations from two to three years. *See Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995).

The parties contend that $613,333.33 is a reasonable settlement in light of several legal and factual disputes that could limit liability and damages, including whether the time spent donning and doffing was "de minimis" and thus not compensable, and whether Marathon was entitled to subtract from employees' wages the amount of time it took them to walk from the time clock to their workstations.

The court agrees with the parties that a substantial discount of the maximum damages was appropriate because success on the merits was far from clear. Even a debatable defense would preclude a finding of bad faith or willfulness, and that by itself would substantially reduce the total damage award. There was a fair chance that Ackley would have been unable to prove liability at all. An additional discount is also appropriate because the case settled

6

relatively early, saving significant expense. Under these circumstances, a settlement that represents between 20 to 25 percent of the maximum is not unreasonable on its face.

The court raised three issues regarding whether the employees were treated fairly relative to each other: (1) whether it was fair to use the number of weeks worked rather than some other metric or metrics to calculate each employee's settlement share; (2) why the parties equally divided each class member's settlement share between the FLSA and Wisconsin claims; and (3) whether a $20,000 "service award" was justified for Ackley.

As for whether it was fair to use the number of weeks worked to determine each employee's pro rata share, the parties explain that most employees worked about 40 hours a week, so it was not necessary to count shifts to prevent disparity among employees who worked more or fewer hours. Relying solely on weeks worked did mean that the parties did not account for differences between employees working at different facilities and donning and doffing different amounts of gear. But, as already discussed, the differences in unpaid wage would likely be modest, so it would not be cost effective to expend the significant additional effort that would be necessary to make more individualized assessments. *See Troutman v. Weston Memory Care, LLC*, No. 20-cv-332-jdp, slip op. at 3 (W.D. Wis. Nov. 19, 2021) (approving flat amount for each employee in case involving low damages). The court will preliminarily approve the parties' use of weeks worked to calculate settlement shares. If any employees believe that their share is inequitable, they will be free to raise that objection.

As for why the parties equally divided each class member's settlement share between the FLSA and state-law claims, counsel explain that they were trying to balance competing interests. Specifically, counsel say that the state-law claims allow recovery for all unpaid wages, not just overtime, but the FLSA claims potentially have a longer statute of limitations and

allow recovery for double damages. Counsel also say that equally dividing the damages ensures that both class members who do not opt into the collective and employees in Idaho and Mississippi who are not part of the Wisconsin class can still receive significant compensation. As this court has noted before, settlements involving overlapping state and federal claims require judgment calls about how to allocate the settlement, and there is more than one reasonable way to do it. *See Allen v. Lanier, Inc.*, No. 22-cv-258-jdp, 2023 WL 3529512, at *2 (W.D. Wis. May 18, 2023); *Wallis v. Oz Management Group, Inc.*, No. 21-cv-290-jdp, slip op. at 4 (W.D. Wis. Mar. 20, 2023). The allocation chosen by the parties does not appear to be unreasonable on its face, so the court will preliminarily approve it.

As for Ackley's $20,000 "service award," the justification in the first motion for preliminary approval was that Ackley is releasing a broader array of claims, including discrimination claims. Dkt. 19, at 11–12 (citing Dkt. 20, § V.A.). But the court rejected that argument:

> [T]his case is not about discrimination. The parties acknowledge that Ackley was pursuing a discrimination claim against Marathon before the Wisconsin Department of Workforce Development, Dkt. 21, ¶ 10. But that claim was not part of this case, so Ackley should not be compensated in the context of this case at the expense of other class members for releasing unrelated claims.
>
> In any event, a service award is not compensation for a release; it is based on "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Any request for a service award must be based on those factors.

Dkt. 23, at 9–10.

In her renewed motion for preliminary approval, Ackley does not contend that her discrimination claim is a basis for the service award. Instead, counsel gives two other reasons for the award: (1) she assisted counsel in litigation; and (2) she was still employed by Marathon when she filed the lawsuit, so she faced a risk of retaliation.[2]

Both of the reasons Ackley identifies support giving her a service award. But the typical service award in this court is $5,000 or less.[3] To justify such an unusually large award, Ackley would have to show that she provided an unusually high amount of assistance, and she would have to carefully document the evidence supporting the award. Ackley has not done that.

Counsel's declaration identifies the following types of assistance that Ackley provided during litigation:

- She provided documents to counsel that they used to draft the complaint, including her earnings statements and copies of Marathon's policies. Dkt. 29, ¶¶ 20, 25.

- She provided information to counsel about the process for donning and doffing protective gear. Counsel did not have records about donning and doffing, so they relied on this information to create a damages model. *Id.*, ¶ 27.

- She discussed the proposed settlement with counsel and then authorized the settlement. *Id.*, ¶ 33.

---

[2] Ackley also cites *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876–77 (7th Cir. 2012), for the proposition that "a class action plaintiff assumes a risk; should the suit fail, he may find himself liable for the defendant's costs or even, if the suit is held to have been frivolous, for the defendant's attorneys' fees." But Ackley does not say that her retainer agreement with counsel would have required her to pay fees or costs if the lawsuit had failed, so the court will not consider that risk as part of the justification for the service award.

[3] *See Linman v. Marten Transport, Ltd.*, No. 22-cv-204-jdp, 2024 WL 2974831, at *4 (W.D. Wis. June 13, 2024); *Wallis*, No. 21-cv-290-jdp, slip op. at 9–10; *Fox v. Iowa Health System*, No. 18-cv-327-jdp, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021); *Jewell v. HSN, Inc.*, No. 19-cv-247-jdp, 2020 WL 4904427, at *3 (W.D. Wis. Aug. 19, 2020); *Goplin v. WeConnect, Inc.*, No. 17-cv-773-jdp, 2019 WL 13322261, at *3 (W.D. Wis. Nov. 25, 2019) *see also Espenscheid*, 688 F.3d at 877 ("The incentive award therefore usually is modest—the median award is only $4,000 per class representative.").

This description of the assistance Ackley provided seems typical of the assistance that named plaintiffs provide in class and collective actions. Counsel do not say that Ackley spent an unusually large amount of time or effort providing assistance. She was not deposed, and she did not prepare her own declaration.

A somewhat larger-than-usual award may be justified by Ackley's status as the sole named plaintiff and as a current employee who faced a risk of retaliation. But counsel have not shown that a $20,000 is justified. Based on the current filings, the court would not approve an award of more than $10,000. But the court can still grant the motion for preliminary approval because the settlement does not require Ackley to receive that amount; it says only that class counsel will ask for that amount, but that any reduction in the service award will be distributed to the rest of the class and collective. Dkt. 20-1, § II.B.4.

Ackley's counsel say that they are prepared to make a more robust showing to support the amount of the reward if the court is not persuaded. Counsel does not explain why they did not provide the court with all relevant information in response to the court's order to justify the award. Regardless, the court will grant the request, but the notice to the class and collective will need to explain the situation so that employees can make an informed decision whether to object to the service award. Marathon also asks for an opportunity to object to the service award, and the court grants that request.

The current notice states the following about the service award: "Of the total Settlement Fund, a Service Award in an amount to be approved by the Court will be paid to the Named Plaintiff." Dkt. 26-1, at 3; Dkt. 26-2, at 3. That is not sufficient because it conceals the amount of the requested award. That portion of the notice should be amended as follows:

> Class counsel is proposing that class representative Karrie Ackley receive a $20,000 award in recognition of her efforts in bringing and pursuing the lawsuit. This award is in addition to the amount that Ackley will receive as part of her pro rata share of the settlement. The request is subject to court approval. Any reduction in the award will be distributed to the [class/collective] based on each member's pro rata share.

The portion of the notice discussing the request for attorney fees is similarly vague: "Of the total Settlement Fund, attorneys' fees and costs in an amount to be approved by the Court will be paid to Class Counsel. You are not personally responsible for any attorneys' fees or costs." Dkt. 26-1, at 3; Dkt. 26-2, at 3. Again, this does not allow employees to make an informed decision whether to object. That portion of the notice should be amended as follows:

> Class counsel is requesting $316,666.67 in attorney fees and costs, and that request is subject to court approval. If the court grants counsel's request, that will not affect your settlement share identified above. But any reduction in the award will be distributed to the [class/collective] based on each member's pro rata share.

One final point. The parties are reminded that they are responsible for notifying the relevant state and federal officials under 28 U.S.C. § 1715. The court expects the parties to comply with those requirements so that there are no delays if and when the court gives final approval of the settlement.

## ORDER

IT IS ORDERED that:

1. The renewed motion to certify the class and collective and preliminarily approve the settlement agreement, Dkt. 26, is GRANTED.

2. The court certifies the following collective and class:

> **FLSA Collective**. All hourly-paid production employees employed by Defendant between April 26, 2019, and April 26,

2022, as identified in Exhibit A to this Agreement and who file a Consent to Join Form within 45 calendar days of the postmark date on the Notice Packet.

**Wisconsin Class**. All hourly-paid production employees employed by Defendant in Wisconsin between April 26, 2020, and April 26, 2022, as identified in Exhibit A to this Agreement and who do not file a Request to Exclude within 45 calendar days of the postmark date on the Notice Packet.

3. The court approves Walcheske & Luzi, LLC as class counsel.

4. Marathon Cheese Corporation may have until September 6, 2024, to provide the claims administrator with the names and last-known addresses of all class and collective members.

5. The claims administrator may have until September 20, 2024, to send out the class notices after class counsel makes the changes identified in this order. The notices should give members 45 days to opt in to the collective, opt out of the class, or file an objection.

6. The parties may have until December 6, 2024, to file a motion for final approval and a motion for fees and costs. Marathon Cheese Corporation may have until December 13, 2024, to object to the service award. Any reply by Ackley is due by December 18, 2024.

7. The court will hold a fairness hearing on January 17, 2025, in Courtroom 260 at 2:00 p.m.

Entered August 30, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

12