UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

KARRIE ACKLEY,
on behalf of herself and all
others similarly situated,

        Plaintiff,                        Case No. 22-cv-232

    v.

MARATHON CHEESE CORPORATION,

        Defendant.

## JOINT MOTION FOR AND BRIEF IN SUPPORT OF FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

Plaintiff, Karrie Ackley, on behalf of herself and all others similarly situated, and Defendant, Marathon Cheese Corporation, (together, the "Parties"), jointly move this Court for final approval of their Settlement Agreement & Release ("Settlement Agreement") as filed with the Court as ECF No. 20, and as preliminarily approved by this Court on August 30, 2024. (ECF No. 30.)

## PROCEDURAL POSTURE AND NOTICE ADMINISTRATION RESULTS

On June 6, 2023, the Parties jointly moved this Court for preliminary approval of their Settlement Agreement. (ECF Nos. 18-22.) On January 5, 2024, the Court entered an Opinion and Order denying that motion without prejudice. (ECF No. 23.) In response thereto, on March 4, 2024, the Parties filed their Renewed Joint Motion for Preliminary Approval of Collective and Class Action Settlement and Supporting Supplemental Brief. (ECF Nos. 26-29.) Upon review of the additional information included therein, this Court entered an Opinion and Order preliminarily

approving the Parties' Settlement Agreement on August 30, 2024 ("Opinion and Order"). (ECF No. 30.)

The Court's Opinion and Order, in part, certified an FLSA Collective and a WWPCL Class, defined as follows:

> **FLSA Collective**. All hourly-paid production employees employed by Defendant between April 26, 2019, and April 26, 2022, as identified in Exhibit A to [the Settlement] Agreement and who file a Consent to Join Form within 45 calendar days of the postmark date on the Notice Packet.

> **Wisconsin Class**. All hourly-paid production employees employed by Defendant in Wisconsin between April 26, 2020, and April 26, 2022, as identified in Exhibit A to [the Settlement] Agreement and who do not file a Request to Exclude within 45 calendar days of the postmark date on the Notice Packet.

The putative FLSA Collective was comprised of current and former hourly-paid production employees in the states of Idaho, Missouri, and Wisconsin (inclusive of all members of the WWPCL Class) and totaled a maximum of approximately 4,106 individuals. (*See* ECF No. 20-1.) Given that there is only a Wisconsin class, individuals employed in states other than Wisconsin had to affirmatively opt-into the FLSA Collective to participate in (and recover from) the Settlement Agreement. (*See* ECF Nos. 20-1, 20-3.) Conversely, WWPCL Class members who did not opt-into the FLSA Collective, but also did not opt out of the Class, remained members of the Class and remained participants in, and stood to recover from, the Settlement Agreement. (*See* ECF Nos. 20-1, 20-2.) However, if WWPCL Class members additionally joined the FLSA Collective, they were awarded additional monies to account for the greater statute of limitations period and liquidated damages available under the FLSA, as well as in consideration for releasing their FLSA rights, in addition to their rights under Wisconsin state law.

The Parties retained the services of a third-party administrator, Rust Consulting, Inc. ("Rust Consulting") to administer notice and, should this Court grant final approval of the Settlement Agreement, to administer settlement checks to all members of the Settlement Class (all participating members of the FLSA Collective and WWPCL Class). (*See* Settlement Agreement, § IV.)

To provide notice and receive consent forms, requests for exclusion, and objections to the Settlement Agreement, Rust Consulting obtained a mailing address, fax number, and email address specific to this litigation. (Declaration of Jennifer Mills for Rust Consulting, Inc. ("Mills Decl."), ¶¶ 4-6.) After receiving a mailing list containing the names and addresses of all putative FLSA Collective and WWPCL Class members, Rust Consulting processed and updated the addresses utilizing the National Change of Address Database maintained by the United States Postal Service. (*Id.* ¶¶ 8-9.) On September 20, 2024, Rust Consulting mailed FLSA Class Notices to 1,536 individuals who were eligible to participate solely in the FLSA Collective and mailed WWPCL and FLSA Class Notices to 2,570 individuals who were eligible to participate in the WWPCL Class and the FLSA Collective. (*Id.* ¶ 11.)

Of the 4,106 notices Rust Consulting originally mailed, eight (8) were returned as undeliverable, but contained forwarding addresses, to which Rust Consulting promptly remailed the notices. (*Id.* ¶ 13.) 337 were returned as undeliverable without forwarding addresses, but Rust Consulting performed address traces and identified 268 more current addresses, to which Rust Consulting promptly remailed the notices. (*Id.* ¶ 12.) For the remaining 69 notices returned as undeliverable, Rust Consulting was unable to obtain updated mailing information. (*Id.*) Of the 268 notices remailed to more current addresses, 56 were returned as undeliverable a second time. (*Id.*)

Accordingly, as of December 4, 2024, 125 notices remain undeliverable, leaving just 3% of the putative Settlement Class without receipt of the court-approved notice. (*Id.*)

Pursuant to the Settlement Agreement and the notices sent to all putative Settlement Class Members, recipients had 45 calendar days from the date of notice mailing, or until November 4, 2024, to join the FLSA Collective, request exclusion from the WWPCL Class, and/or object to the terms of the Settlement Agreement. (Settlement Agreement, § III.B.; ECF Nos. 20-2, 20-3; *see also* Mills Decl. ¶¶ 11-15.)

Rust Consulting received a total of 704 Consent to Join Forms and ten (10) requests for exclusion. (Mills Decl. ¶¶ 14-15.)

Rust Consulting received 671 Consent to Join Forms postmarked on or before November 4, 2024, (*id.* ¶ 14.i), and 33 Consent to Join Forms postmarked after November 4, 2024. (*Id.* ¶ 14.ii.) The Parties accepted the "late" Consent to Join Forms, bringing the FLSA Collective to a total of 704 individuals, including Named Plaintiff and David Wilcox, whose consent forms were previously filed with the Court. (*See id.*; ECF No. 17.)

Rust Consulting received ten (10) requests for exclusion from the WWPCL Class postmarked on or before November 4, 2024. (Mills Decl. ¶ 15.) As a result, the WWPCL Class is comprised of 2,560 individuals. (*See id.* ¶¶ 11, 15.)

As of December 4, 2024, Rust Consulting had not received any objections to the Settlement Agreement. (*Id.* ¶ 16.)

In addition to administering notice to putative Settlement Class members, Rust Consulting was also responsible for sending CAFA Notices. Defense counsel instructed Rust Consulting to mail CAFA Notices to Attorneys General in the states of California, Connecticut, Florida, Georgia, Idaho, Illinois, Kansas, Michigan, Minnesota, Nebraska, New Mexico, North Dakota, New York,

Oklahoma, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin, as well as the Commonwealth of Puerto Rico, and the United States Attorney General. (Declaration of Sarah K. Keebler ("Keebler Decl.") ¶ 2.) On September 16, 2019, Rust Consulting mailed (or emailed upon an Attorney General's request) CAFA Notices to each of the states' and Puerto Rico's Attorneys General. (Mills Decl. ¶ 10.) On November 25, 2024, Defendant's counsel realized, upon reviewing Rust Consulting's draft declaration in support of this motion, that Rust Consulting had not mailed a CAFA notice to the U.S. Attorney General and promptly notified Rust Consulting of this error. (Keebler Decl. ¶ 4.) Rust mailed the CAFA notice to the U.S. Attorney General the very next day. (Mills Decl. ¶ 10.)

As this Court is aware, a final approval order may not be issued earlier than 90 days after the later of the dates on which the appropriate federal official and the appropriate state officials are served with the CAFA notice. *See* 28 U.S.C. § 1715(d). Ninety days after November 26, 2024, is Monday, February 24, 2025.

As of the date of this Motion, no objections or responses have been received in response to the mailed CAFA Notices. (Declaration of James A. Walcheske in Support of Motions ("Walcheske Decl."), ¶ 50.)

## ANTICIPATED SETTLEMENT FUND DISTRIBUTION

As memorialized in the Settlement Agreement, the Parties anticipate the Net Settlement Fund to be $613,333.33, with each participating Settlement Class member receiving the amounts specified in Exhibit A to the Settlement Agreement. (Settlement Agreement, § II.B.3.) This anticipated Net Settlement Fund amount assumes approval of a Service Award to Named Plaintiff in the amount of $20,000, as well as attorneys' fees and costs to Class counsel in the amount of $316,666.67. (*Id.* §§ II.B.1-2.) Should the Court award a lower Service Award and/or attorneys'

fees and costs to Class counsel, the excess dollars set aside for the awards pursuant to the Parties' Settlement Agreement will be added back into the Net Settlement Fund and reallocated on a *pro rata* basis to the individuals identified on Exhibit A to the Settlement Agreement, with "unclaimed" monies reverting to Defendant. (*Id.*, § II.B.4.)

Of the anticipated Net Settlement Fund, the Parties allocated $405,089.20 to the FLSA Collective and $208,244.13 to the WWPCL Class. (*Id.* at Ex. A.) Of the $405,089.20 allocated to the FLSA Collective, $86,089.60 was "claimed" by the 704 individuals who consented to join the same. (Walcheske Decl., ¶ 54, Ex. 4.) Of the $208,244.13 allocated to the WWPCL Class, $207,068.91 was claimed by the 2,560 participating WWPCL Class members who did not request exclusion from the same. (*Id.* at ¶ 54, Ex. 4.)

Within five (5) business days of the Settlement Effective Date as defined in the Settlement Agreement, (*id.* § IV.A), Defendant will provide Rust Consulting with a spreadsheet confirming the amounts payable to each Settlement Class member from the Net Settlement Fund, inclusive of any additional amounts awarded to them by virtue of a lessened Service Award and/or attorneys' fees and costs, as determined by this Court. (*Id.* § IV.B.)

Within ten (10) business days of the Settlement Effective Date, Defendant will deposit all amounts payable to Settlement Class members, Named Plaintiff, and Class counsel with Rust Consulting for distribution. (*Id.* § IV.C.) Rust Consulting will then distribute Settlement Checks within ten (10) business days thereafter. (*Id.* § IV.D.)

As with settlement notice administration, Rust Consulting is responsible for taking appropriate steps to obtain and remail any Settlement Checks returned as undeliverable and promptly remailing the same. (*Id.* § IV.F.) In addition, should any Settlement Class member alert Rust Consulting or counsel of a missing or lost check (or should a Settlement Class member require

a "new" check for any other reason), Rust Consulting will issue a stop payment order on the "initial" check and issue a replacement. (*Id.* § IV.E.)

Settlement Checks that are ultimately undeliverable (by reason of Rust Consulting being unable to obtain alternative mailing information or a check being returned a second time) and uncashed or undeposited within 60 days of issuance will be void and will revert to Defendant. (*Id.* §§ IV.E, G.)

## <u>ARGUMENT</u>

## I.    FINAL SETTLEMENT APPROVAL STANDARD

Under Federal Rule of Civil Procedure 23, a class action settlement may be approved only if a hearing has been conducted, and the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To evaluate whether the proposal is "fair, reasonable, and adequate," courts consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate; and

(D) the proposal treats class members equitably relative to each other.

*Id.; Hobon v. Pizza Hut of S. Wis., Inc.*, No. 17-cv-947-slc, 2019 WL 13217369, at *1-2 (W.D. Wis. Dec. 13, 2019).

Similarly, under the FLSA, courts may approve a settlement agreement that is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," rather than a waiver of the employee's statutory rights. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th Cir. 1982). District courts may approve such agreements to "promote the policy of encouraging settlement of litigation." *Id.* at 1354. "Factors considered when reviewing settlement

agreements for FLSA collective actions include 'the range of reasonableness of the settlement fund in light of the best possible recovery [and] all the risks of litigation,' such as the risks of establishing liability and damages." *Goplin v. WeConnect, Inc.*, No. 17-cv-773-jdp, 2019 WL 13322261, at *2 (W.D. Wis. Nov. 25, 2019) (citations omitted). This Court generally has applied the Rule 23 standard to both state and federal wage-and-hour claims. (ECF No. 30 at 2.)

## II.    FINAL SETTLEMENT APPROVAL IS APPROPRIATE: THE SETTLEMENT AGREEMENT REPRESENTS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE.

This case involves *bona fide* disputes regarding whether Defendant violated the FLSA and the WWPCL as alleged by Plaintiff. Indeed, the Parties had diametrically opposed positions on liability, the viability of class and/or collective certification, and the extent of damages, if any. (*See* ECF No. 19, pp. 3-5; *see also* ECF No. 26, pp. 15-23.) As succinctly summarized in the Parties' *Renewed Joint Motion for Preliminary Approval of Collective and Class Action Settlement and Supporting Supplemental Brief*:

> From Plaintiff's perspective, the Parties' settlement reflects the likelihood Plaintiff achieves certification on its class and collective claims but accepts a calculated discount on its maximum potential damages, which assumes Plaintiff would prove willfulness and the absence of good faith by Defendant. From Defendant's perspective, the Parties' settlement reflects the likelihood Plaintiff achieves certification on its class and collective claims but accepts a damages enhancement for Plaintiff's donning and doffing claim and potential inability to apply a Portal-to-Portal credit as a result.

(ECF No. 26, p. 23.)

Given their stated positions, this Court noted its agreement in its Opinion and Order:

> [T]hat a substantial discount of the maximum damages was appropriate because success on the merits was far from clear. Even a debatable defense would preclude a finding of bad faith or willfulness, and that by itself would substantially reduce the total damage award. There was a fair chance that Ackley would have been unable to prove liability at all.

(ECF No. 30, p. 6.)

Both parties faced risks in this litigation, primarily with respect to the ultimate merit and potential reach of Plaintiff's claims. The Settlement Agreement resolves these questions and does so on a far-reaching basis. Accordingly, while Plaintiff may have taken a "discount" and Defendant feels it has agreed to more than what Plaintiff could otherwise obtain through this litigation, the Parties believe that, ultimately and under the circumstances presented, the Settlement Agreement represents a fair, reasonable, and adequate resolution of Plaintiff's claims.

The Parties' Joint Motion for Preliminary Approval (ECF Nos. 18-22) and Renewed Motion for Preliminary Approval (ECF Nos. 26-29) analyze the requisite factors to demonstrate the Settlement Agreement is fair, reasonable, and adequate under Rule 23(e)(2) and a fair and reasonable resolution of a bona fide dispute under the Fair Labor Standards Act. Except for Named Plaintiff's proposed service award and Class counsel's request for attorneys' fees and costs,[1] the Court did not raise concerns in its preliminary approval Opinion and Order, (ECF No. 30), regarding the Parties' fairness analysis under Rule 23 and the FLSA. Therefore, in lieu of repeating the same analysis here, the Parties provide the following high-level summary for the Court's consideration.

**A.    Named Plaintiff and Class counsel have adequately represented the Settlement Class.**

The Court has already determined the Named Plaintiff is an adequate class representative and Class counsel has significant experience litigating and obtaining settlements for similar class and collective actions. (ECF No. 30 at 3-4.)

---

[1] Class Counsel will address these remaining issues by separate filing.

**B.    The Settlement Agreement is the product of arm's length negotiations.**

The Parties submit that all discussions and negotiations in this case were conducted at arm's length. (*See* ECF No. 19, p. 11; *see also* ECF No. 26, pp. 10, 12, 23.) Indeed, the Parties' filings in this case make clear that they disagree on effectively all aspects of this litigation – the merits of Plaintiff's claims, what liability, if any, flows from the same, the similarity and commonality or lack thereof between Plaintiff and those on whose behalf she brought her claims, the similarity and commonality or lack thereof between Defendant's locations, the presence or absence of willfulness, damages, if any, should liability be established, and the appropriateness of liquidated damages. (*See, e.g.,* ECF No. 26, pp. 15-23.) Such hard-fought disagreements demonstrate the absence of any collusion between the Parties and counsel for the same.

**C.    The relief provided to each member of the Settlement Class is adequate and equitable.**

Although the Court initially raised concerns with the adequacy of relief to the class and the relative fairness of the settlement for each class member, after the Parties' provided additional detail in their Renewed Joint Motion for Preliminary Approval, the Court concluded that neither the settlement amount, nor the Parties' use of weeks worked to calculate settlement shares, nor the allocation chosen by the Parties appeared to be unreasonable on its face, and granted preliminary approval of the Settlement Agreement. (ECF No. 30, pp. 6-8.)  The Court then made modifications to the Parties' proposed notice to ensure employees could make an informed decision about whether to object. (*Id.* pp. 10-11.) Rust Consulting received no objections, thereby confirming the adequacy of relief provided to the Settlement Class and the relative fairness of the settlement as to each Settlement Class member.

As indicated, *supra*, Rust Consulting mailed notice of the Settlement Agreement to 4,106 individuals, with just 125 notices ultimately remaining undeliverable. (Mills Decl., ¶¶ 11-12.)

Despite the large number of individuals potentially impacted by the Settlement Agreement, Rust Consulting did not receive any timely or untimely objections. (*Id.* at ¶ 16.) Similarly, despite there being 2,570 members of the putative WWPCL Class as certified, only ten (10) requested exclusion from the same. Finally, while notice recipients were instructed to direct any and all questions concerning the Parties' Settlement Agreement to Plaintiff's counsel, while certain individuals did so, none expressed any concerns or reservations regarding the Settlement Agreement. (Walcheske Decl., ¶ 51.)

Given the foregoing, the Parties believe that the amounts recoverable (and that will be recovered) by each Settlement Class member constitute a reasonable and adequate recovery and that, under all the circumstances presented, the Settlement Agreement is fair, reasonable, and adequate.

## **CONCLUSION**

Given the totality of the foregoing, as well as for the reasons set forth in the Parties' prior filings in support of preliminary approval, the Parties believe that their Settlement Agreement and the terms contained therein are fair, reasonable, and adequate, and warrant approval from the Court. Accordingly, the Parties respectfully request that this Court:

1.     Approve the Parties' Settlement Agreement as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23;

2.     Approve the Parties' Settlement Agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act;

3.     Find that the Parties and all participating Settlement Class members are bound by the Parties' Settlement Agreement;

4.     Order that Plaintiff's released claims and the respective released claims of all participating Settlement Class members are dismissed with prejudice;

5.     Order that the FLSA claims of all individuals who did not affirmatively consent to join the FLSA Collective and the WWPCL claims of all individuals who timely and properly requested exclusion from the WWPCL Class are dismissed without prejudice;

6.     Approve a Service Award to Named Plaintiff in an amount determined by the Court; and

7.     Approve an award of attorneys' fees and costs to Plaintiff's counsel in an amount determined by the Court.

8.     Dismiss this lawsuit on the merits and with prejudice.


Dated this 6th day of December, 2024.

**WALCHESKE & LUZI, LLC**
Counsel for Plaintiff

 s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, State Bar No. 1067009
WALCHESKE & LUZI, LLC
235 North Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Email: jwalcheske@walcheskeluzi.com
Email: sluzie@walcheskeluzi.com
Email: dpotteiger@walcheskeluzi.com
Telephone: (262) 780-1953

**GODFREY & KAHN, S.C.**
Counsel for Defendant

 s/ *Erin M. Cook*
Josh Johanningmeier, State Bar No. 1041135
Erin M. Cook, State Bar No. 1074294
Sarah K. Mueller, State Bar No. 1114561
GODFREY & KAHN, S.C.
833 E. Michigan Street, Suite 1800
Milwaukee, Wisconsin 53203
Email: jjohanningmeier@gklaw.com
Email: mcook@gklaw.com
Email: smueller@gklaw.com
Telephone: (414) 273-3500